## Case No. 14,962.

UNITED STATES v. DISTILLERY AT SPRING VALLEY.

[8 Ben. 473; [1] 22 Int. Rev. Rec. 218.]

District Court, S. D. New York. June, 1876.

INTERNAL REVENUE — FORFEITURE — CONNIVANCE OF STOREKEEPER.

The connivance of a government storekeeper in charge of a distillery, with the person who runs the distillery, will not have the effect to destroy the forfeiture of the property resulting from the acts of such person under the internal revenue acts of 1864, 1866, 1868, and 1872 (13 Stat. 240; 14 Stat. 111; 15 Stat. 59, 132, 134; 17 Stat. 240).

A suit was brought by the United States to forfeit this property for alleged violation of the internal revenue acts, and, under the charge of the district court, the jury found a verdict against the government. The judgment was, however, reversed by the circuit court, on writ of error (see [Case No. 14,963]), and the case came before this court for a second trial, at which the claimant maintained, that, as it now appeared that the frauds upon the

revenue, charged to have been committed by the person who was running the distillery, were commited with the connivance of the government storekeeper in charge of the distillery, the forfeiture of the property could not be enforced.

R. M. Sherman, Asst. U. S. Dist. Atty.
Geo. Ticknor Curtis, for claimant.

---

## Case No. 14,963.

UNITED STATES v. DISTILLERY AT SPRING VALLEY.

[11 Blatchf. 255; [1] 18 Int. Rev. Rec. 59.]

Circuit Court, S. D. New York. Aug. 12, 1873.

FORFEITURE — OWNERSHIP OF PROPERTY — DISTILLING AFTER NOTICE OF SUSPENSION — FORFEITURE OF LAND — COMPLICITY OF OWNER.

1. The 48th section of the act of June 30, 1864 (13 Stat. 240), as amended by the 9th section of the act of July 13, 1866 (14 Stat. 111), in providing for a forfeiture of "tools, implements, instruments and personal property," is not limited to the property of the person having the fraudulent purpose mentioned in the section, or to property constituting part of the manufacturing apparatus used in the business.
[Cited in U. S. v. Sixteen Barrels of Distilled Spirits, Case No. 16,300.]

2. The 22d section of the act of July 20, 1868 (15 Stat. 134), as amended by the 12th section of the act of June 6, 1872 (17 Stat. 240), in providing that a distiller who carries on business after the time stated. in a notice of suspension. as the time of suspension, shall incur the forfeitures provided for persons who carry on the business of a distiller without having given the bond required by law, being the forfeitures mentioned in the 44th section of the same act (15 Stat. 142), as amended by the 12th section of the said act of June 6, 1872, means, by the words "shall incur," "shall cause or bring on," and is not limited to a forfeiture only of the interest of such distiller in the things which are made the subject of the forfeitures.
[Cited in U. S. v. Loeb, 14 Fed. 688.]

3. The said 44th section, in providing for the forfeiture of the interest in the land on which a distillery is situated, of every person who know-

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ingly has suffered or permitted the business of a distiller to be there carried on, or who has connived at the same, does not require that he should have knowingly suffered or permitted it to be fraudulently carried on, or that he should have connived at such fraud.

[Cited in Dobbins' Distillery v. U. S., 96 U. S. 404; Gregory v. U. S., Case No. 5,803; U. S. v. One Copper Still, Id. 15,928.]

4. The 5th section of the act of March 31, 1868 (15 Stat. 59), in declaring that a distiller shall forfeit the distillery and distilling apparatus used by him, means, by the words "shall forfeit," "shall subject to forfeiture."

5. The 19th section of the act of July 20, 1868 (15 Stat. 132), in providing that "the distillery," &c., shall be forfeited. forfeits the property, irrespective of the question of its ownership.

6. In none of those sections is any proof required of the actual complicity of the owner of the property to be forfeited. in the fraud or other thing which causes the forfeiture.

[Cited in U. S. v. Two Horses, Case No. 16,-578.]

[In error to the district court of the United States for the Southern district of New York.,

[This was a suit by the United States to forfeit the distillery at Spring Valley, New York, for violation of the internal revenue acts. In the district court there was a verdict for the claimant. Case unreported. The plaintiff then brought error.]

Thomas Simons, Asst. U. S. Dist. Atty. George T. Curtis, for claimant.

WOODRUFF, Circuit Judge. The distillery at Spring Valley, in Rockland county, New York, with the land on which it stands, and certain land used for ingress to and egress from the same, and, also, the stills and other apparatus, tools, implements, and instruments used, fit and intended for use, in the distillation of spirits, were, together with certain distilled spirits and raw materials for distillation, seized, on the 22d of January, 1873, for alleged violations of the internal revenue laws relating to distillers, distillation, and the taxes, &c., imposed thereon. Upon such seizure, the information, in behalf of the United States, in this cause, was filed in the district court, and condemnation of the property prayed for, as forfeited by reason of such violations. Elijah Brown only appeared herein as claimant, setting up his ownership of the distillery, and its fixtures, and the real estate seized, in fee, and the ownership of the tools, implements, apparatus and instruments, (other than fixtures,) provided for. used. and intended for use, in distilling upon the premises, but making no claim to the distilled spirits, or to the raw materials seized. It is unnecessary to state the pleadings more fully, since no question is made, on the argument herein, that the pleadings are not sufficient for all the purposes of proof, or of the argument of the questions raised on the trial. The revenue laws alleged to have been violated, and to which the several counts in the information

relate, are, section 48 of the act of June 30, 1864 (13 Stat. 240), as amended by the 9th section of the act of July 13, 1866 (14 Stat. 111), section 22 of the act of July 20, 1868 (15 Stat. 134), as amended by the 12th section of the act of June 6, 1872 (17 Stat. 240), section 44 of the last named act (15 Stat. 142), as amended by the 12th section of the said act of June 6, 1872, section 5 of the act of March 31, 1868 (Id. 59), and section 19 of the said act of July 20, 1868 (Id. 132), the provisions of which, so far as material to the questions discussed, will be hereinafter stated.

Evidence was given showing that, on, and for more than three years prior to, the day of the said seizure, the claimant, Elijah Brown, was the owner in fee of the distillery and fixtures and real estate seized, and claimed by him herein, and the owner of the movable tools, implements and instruments used and fit, and intended to be used, for distillation, seized on the premises, and also claimed by him as aforesaid. Evidence was also given, tending to show, that, on the 3d of November, 1870, an indenture of lease of the said lot or tract of land on which the distillery is situate, with the distillery buildings thereon, and the machinery and fixtures in said buildings, was executed and delivered by the said claimant to the copartnership firm of M. Newman & Company, (which consisted of Marcus Newman, Simon Kahnweiler and the said claimant, Elijah Brown,) to carry on the business of a distiller therewith, for five years from the 12th of October, 1870, at a rent therefor in money, manure and distillery slops, as particularly mentioned; that, on the same 3d of November, 1870, the said Brown, the claimant, executed his consent, in form as required by the 8th section of the act of July 20, 1868 (15 Stat. 128), reciting the execution of the said lease, and, among other things, containing as follows: "I do hereby consent that the leasehold premises aforesaid may be used for the purpose of distilling spirits, subject to the provisions of law, and I stipulate and agree that the lien of the United States for taxes and penalties shall have priority to my reversionary interest, and that. in case of the forfeiture of the distillery premises, or any part thereof, the title of the same shall vest in the United States, discharged from my claim as such reversioner and owner;" that the said firm of M. Newman & Company never did any business under their said copartnership, but, on or about the 27th of September, 1871, the interest of the said M. Newman & Company was transferred by the said claimant, Brown, to Marcus Newman; that, on the said 27th of September, 1871, the said claimant, Brown, entered into and executed an agreement with the said Marcus Newman, with covenants relating to the conditions upon which the said Newman should carry on the business of a distiller at the said distillery and premises of the said Brown, during

the residue of the said leasehold term and an extension of such term, if desired, and that said Newman should have the privilege of procuring a railroad to be built, and have a right of way across the said Brown's land to his said distillery; and that thereafter, and to the date of the said seizure, the said Newman carried on the business of a distiller at said distillery and premises under the said agreement, and carried it on there with the knowledge of the said Brown that it was carried on there, an.. with the permission and sufferance of the said Brown to the carrying it on there, and that such railroad was constructed and used as a way over or across the land of the said Brown, for the purpose of ingress and egress to and from the said distillery, such land so used as a way being the same seized as such way and claimed herein by the said Brown, and was so used by the said Newman with the like knowledge and permission of the said Brown. It was also proved, that all of the property claimed by the said Brown, other than the lot of land and distillery buildings thereon, and the land used for ingress and egress as aforesaid, was property found in the distillery buildings, some part thereof attached thereto by screws, bolts, cleets and other fastenings, and the residue thereof not attached thereto by screws, bolts or other fastenings, but the whole thereof belonged to the claimant, Brown, and was part of the manufacturing apparatus used in the business of distilling, supplied by the claimant, Brown, at his own expense; and that the said Marcus Newman filed the distiller's notice and the usual distiller's bond, duly approved, and other papers required by law, and carried on said business, as respects the officers of the revenue, solely in his own name. Evidence was also given tending to prove violations of the said several sections of the internal revenue laws, and frauds mentioned therein, during the period of about thirteen months prior to the seizure, at the said distillery, and other evidence was offered having a like tendency, which, in harmony with the ruling of the judge presiding at the trial in the district court, on the principal question of law, was rejected; but no evidence was given tending to show that the claimant, Brown, had any knowledge of such frauds or violations of law, or of the intention of the said Newman, or the persons conducting or superintending such business, to commit such violations of such frauds, or that he consented to or connived at any fraud or violation of the law in the conduct of the business, or otherwise in relation thereto, or to the spirits distilled at the distillery or found therein.

It seems to me unnecessary to give, in any further detail, the state of the evidence received, the exceptions to the exclusion of the evidence which was rejected, the numerous requests for specific instructions to the jury which were refused, or the details of the charge which were given and excepted to. A few extracts from the charge will show the principles which governed the conduct of the trial, and which entered into the various other rulings, and the detailed or specific instructions to the jury, and these will exhibit the main and controlling question argued in this court.

The judge charged, that, under the 48th section of the act of June 30th, 1864, no property, other than personal property, could be forfeited; and, second, that all of the machinery and apparatus and other things found in the distillery buildings, and on the distillery premises, used for and in connection with the business of distilling there carried on, and permanently connected with the soil, or with anything attached to the soil, were part of the land, and so not forfeitable under said section; and, third, that all movable articles or implements, found in the distillery or on the premises, if constituting part of the manufacturing apparatus used in the business of distilling, and if supplied by the claimant, at his own expense, as part of the distillery premises, were part of the land, and so not forfeitable, by reason of the charges of the information under said section. The judge further charged, that none of the property claimed and owned by Elijah Brown could be forfeited under section 22 of the act of July 20th, 1868, by reason of any violation, by said Newman, of the provisions of said section, proven as charged in the information, because no property is declared by said section to be forfeitable, except property of the distiller; that the distillery and distilling apparatus claimed and owned by the said Elijah Brown could not be forfeited under the 5th section of the act of March 31st, 1868, although used by said Newman, in carrying on the business of a distiller, in defrauding the United States of the tax on the spirits distilled by him, because no property is declared by said section to be forfeitable, except the property of the distiller; and that, under the 44th and 19th sections of the said act of July 20th, 1868, the articles or implements above described, whether permanently connected with the soil, or movable articles or implements constituting part of the manufacturing apparatus used in the business of distilling, and supplied by the claimant at his own expense, as part of the distillery premises, were part of the land, and not personal property, within the meaning of those sections. The judge further charged, that, in order to forfeit any real estate described in the information, and claimed by said Elijah Brown, under any provision of the internal revenue laws, involved in the present action, by which real estate is, under any circumstances, made forfeitable, the jury must be satisfied that the claimant had guilty knowledge of, and was in complicity with or connived at, the fraudulent or unlawful acts or omissions and intents of the said Newman.

By these or other specific directions the jury were instructed, that, under the 5th section of the act of March 31st, 1868, and the 22d section of the act of July 20th, 1868, no property of the claimant could be forfeited; that the tools, implements, and instruments, used in the work of distilling, owned by the claimant, and furnished at his own expense therefor, as a part of the distillery premises, were to be regarded as real estate, under the 48th, 44th, and 19th sections aforesaid, and could not be forfeited under the 48th section; that the real estate, thus including such tools, implements, and instruments, and including the way owned by the claimant, used for the purposes of ingress and egress to and from the distillery, could not be forfeited, unless the jury should find that Newman was guilty of the fraudulent acts, omissions, and intents mentioned in the aforesaid 48th, 44th, and 19th sections, charged in the information, and should also find that the claimant, with guilty knowledge of, and complicity in, the fraudulent acts and intents of Newman, suffered or permitted the business to be carried on by said Newman with such fraudulent intent, or connived at the carrying on of the same by Newman, with such intent; and, as to false entries in books, or entries omitted, that the claimant knowingly suffered or permitted said Newman, or some other person, to make those false and fraudulent entries or omissions, or connived at the same.

This abbreviation of the charge seems to me to exhibit all that is material to an understanding of the questions hereinafter considered. These instructions were, of course, under a proviso, that the jury should also find, as does not appear to have been denied or doubted, that Marcus Newman held the said distillery premises under a lease from the claimant, as lessor and owner in fee thereof, and that the claimant did not participate in any way in the profits of the distillery, and selling of the liquors manufactured by Newman, but reserved and received money, distillery slops, and manure, as rent for the occupation and use of the distillery premises.

Although several questions apparently arise out of these instructions, and some others out of the rejection of evidence, all would seem to be substantially answered by an answer to the principal inquiry, whether the owner and lessor of a distillery can be deprived of his property without proof of some guilty participation in, or connivance at, the fraudulent or unlawful acts claimed to be causes of forfeiture. This question was, on the trial in the district court, answered by the judge in the negative, by what was tersely stated by the counsel for the claimant, on the argument herein, to be the substance of the charge to the jury, namely, that, where property is leased, the fee cannot be forfeited unless the owner knowingly permits it to be used fraudulently, or connives at

such fraudulent use. The correctness of this is insisted upon, first, as being in accordance with the proper construction of the several sections of the internal revenue acts upon which the information proceeds; and, second, because the contrary would make the law declaring such forfeiture unconstitutional.

To determine the true construction of the several sections counted upon, their language, the intent apparent therein, and the general scope and design of the legislature, manifest when other provisions of the acts are also brought into view, may all be useful; and it will be convenient to state the substance of the sections to be construed, in the order in which they are counted upon.

The 48th section of the act of June 30th, 1864, as amended in 1866, declares, that "all goods, wares, merchandise, articles or objects, on which taxes are imposed by the provisions of law, which shall be found in the possession or custody, or within the control, of any person or persons, for the purpose of being sold or removed by such person or persons in fraud of the internal revenue laws, or with design to avoid payment of said taxes, may be seized * * * and the same shall be forfeited to the United States; and, also, all raw materials found in the possession of any person or persons intending to manufacture the same into articles of a kind subject to tax, for the purpose of fraudulently selling such manufactured articles, or with design to evade the payment of said tax; and, also, all tools, implements, instruments and personal property whatsoever, in the place or building, or within any yard or enclosure, where such articles or such raw materials shall be found, may also be seized by any collector or deputy collector as aforesaid, and the same shall be forfeited as aforesaid." In view of the rulings had upon the trial, two observations upon this section are immediately pertinent—First, there is no word nor phrase therein that describes the tools, implements, instruments and personal property whatsoever, as owned by the person or persons having the fraudulent purpose. "All tools, implements, instruments and personal property whatsoever, in the place," &c., literally excludes any inquiry into the ownership or title; and, second, no distinction is made between tools, implements and instruments constituting part of the manufacturing apparatus used in the business, and other tools, implements and instruments there for some other purpose. Possibly, under this section, fixtures may not be deemed included in the words "tools, implements and instruments," which are more apt to describe articles movable and not attached to the freehold. But, if neither fixtures nor movable articles used in the conduct or carrying on of a manufacturing business are meant, it is obvious, that, in general, the terms, "all tools, implements and instruments," would have no operation, for such tools, &c., are not usually found in a manufactory, intended for

use elsewhere; and, on the contrary, where, in speaking of an intent to manufacture raw materials into articles subject to tax, congress provided for the forfeiture of "all tools, implements and instruments * * * in the place," there would seem to be a presumption that the tools, implements and instruments provided for, and to be used in, such manufacture, were prominently in view.

The 22d section of the act of July 20th, 1868, as amended by the act of 1872, after providing that any distiller desiring to suspend work in his distillery may give notice in writing, stating when he will suspend, and that no distiller, after having given such notice, shall, after the time stated therein, carry on the business of a distiller on said premises, until he shall have given another notice in writing, stating the time when he will resume work, declares, that "any distiller, after the time fixed in said notice declaring his intention to suspend work, who shall carry on the business of a distiller on said premises, or shall have mash, wort or beer in his distillery, or on any premises connected therewith, or who shall have in his possession, or under his control, any mash, wort or beer, with intent to distil the same on said premises, shall incur the forfeitures and be subject to the same punishment as provided for persons who carry on the business of a distiller without having given the bond required by law." The forfeitures here referred to are declared in the 44th section of the same act, to be hereafter stated. The doubt, however, of the meaning of this 22d section, if any, arises mainly from the use of the word "incur." The 44th section employs other language. It declares that certain specified things "shall be forfeited." Now, under the 22d section, does the language, "shall incur the forfeitures," mean, shall bring into operative effect the forfeitures denounced in the 44th section, or does it mean that he shall forfeit his interest in the things so mentioned in the 44th section? When a distiller incurs a forfeiture, it would seem, that, literally, he subjects himself to it, and not that he brings it on another; but, in connection with the 44th section, it may well mean, that the acts described in the 22d section shall have the same operation and effect, in respect of forfeiture, as those which produce forfeitures under the 44th section; in other words, the forfeitures shall be the same in each case—he shall thereby cause, or bring on, the forfeitures, &c. The consideration of the general scheme and purpose of the law will bear significantly upon this.

This 44th section of the same act declares, that "any person * * * who shall carry on the business of a distiller, without having given bond as required by law, or who shall engage in or carry on the business of a distiller, with intent to defraud the United States of the tax on the spirits distilled by him, or any part thereof, shall, for every such offence, be fined * * * and imprisoned * * *. And all distilled spirits or wines, and all stills or other apparatus, fit or intended to be used for the distillation * * * of spirits, * * * owned by such person, wherever found, and all distilled spirits or wines and personal property found in the distillery, * * * or in any building, room, yard, or enclosure connected therewith, and used with or constituting a part of the premises, and all the right, title, and interest of such person in the lot or tract of land on which such distillery is situated, and all right, title, and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or who has connived at the same, and all personal property owned by, or in the possession of, any person who has permitted or suffered any building, yard, or enclosure, or any part thereof, to be used for the purposes of ingress or egress to or from such distillery, which shall be found in any such building, yard, or enclosure, and all the right, title, and interest of every person in any premises used for ingress or egress to or from such distillery, who has knowingly suffered or permitted such premises to be used for such ingress or egress, shall be forfeited to the United States." In this section congress seem to have anticipated a possible discussion, whether it was intended to forfeit property found upon the premises or used for the purposes of distillation, not belonging to the distiller, and to have purposely been so explicit as to preclude inquiry into mere questions of title, and, at the same time, in respect to the real estate, to protect one whose land under lease or out of possession, may, without his knowledge or consent, or, perhaps, even against his will, when he has no power to prevent, be used in or for the purposes of a distillery. Thus, the forfeiture is, first, of spirits, wines, stills and other apparatus owned by the distiller, wherever found; secondly, of all distilled spirits, wines, and personal property found in the distillery, or in any building, &c., connected therewith, and used with or constituting a part of the premises. This second forfeiture is declared irrespective of ownership. It plainly includes property not owned by the distiller. All spirits, wines, stills and other apparatus owned by the distiller had already been declared forfeited, whether found on the distillery premises or not. It would have been meaningless to declare again, second, that the same should be forfeited when found there. Spirits, &c., owned by the distiller, are brought into distinct contrast with the other spirits, &c., named. The latter are only forfeited when found on the distillery premises; the former are forfeited wherever found. Owners of personal property may, in general, be presumed to know where it is, to know for what purposes the place is used, and to be competent to protect it. Indeed, when the practical conduct of the business of distilling is brought into view, the probability is, by no means, slight, that spirits and other personal prop-

·erty found on the distillery premises have some connection with or relation to the very business carried on, as, e. g., the product thereof, the implements therefor, or instruments used in some manner in aid thereof, cattle, hogs, &c., fed therefrom, and the like, all of which tend to its encouragement. The forfeiture is, third, of all the right, title, and interest of the distiller in the lot or tract of land on which such distillery is situated; and, fourth, all right, title, and interest of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same. Here, again, the distinction between the distiller's property and the property of others is declared. Interests in real estate are various, present, future, vested, and contingent. The title may be in one, the present lawful possession and control may be in another. The interest or title of no one ought to be, and by this section is not, exposed to forfeiture, unless there is voluntary permission or sufferance that the premises be used for the business which was here regulated, or there was connivance at its use for that business. But, an owner using the premises as a distillery himself, and an owner voluntarily permitting his premises to be used as a distillery, or conniving at such use, might, without great impropriety, be placed on the same footing. Their relation to a government legislating to suppress frauds in that very business is not very widely different. At least, the government might cast upon such owners responsibility for the use of their own property; and that it was the intention of this law to do so will appear in the progress of the discussion.

One word, however, seems to be called for, in this place, relative to the terms, "has connived at the same." It is argued, that this means, connived at the fraud or intent to defraud. Neither the terms used nor their connection warrant any such interpretation. The interest of one who permits the business of a distiller to be there carried on is forfeited. That language is entirely explicit; and, connived at "the same" means, connived at the carrying on of the business of a distiller there. There was reason for using the word. Sometimes, express permission and knowledge could be proved; but, often, it might be difficult to go further in proof than to show connivance at the carrying on of the business. When, next, the section declares the forfeiture of all personal property owned by, or in possession of, any person who has "permitted" or "suffered" any building, yard, or enclosure, or any part thereof, to be used for purposes of ingress or egress to or from such distillery, which shall be found in any such building, yard, or enclosure, and of all the right, title, and interest of every person in any premises used for ingress or egress to or from such distillery, who has knowingly suffered or permitted such premises to be used for such ingress or egress, nothing is said about connivance. It is enough that it provides for the knowing per-

mission or suffrance of the use for, or in aid of, the business of distilling. The great facility of concealing the business of distilling in rear buildings and in cellars, and in places only accessible through other buildings or passages through the property of others, and, particularly, in cities, no doubt makes this provision an important one.

I pass to the next section counted upon, the 5th section of the act of March 31st, 1868, which declares, that "every person engaged in carrying on the business of a distiller, who shall defraud, or attempt to defraud, the United States of the tax on the spirits distilled by him, or any part thereof, shall forfeit the distillery and distilling apparatus used by him, and all raw materials for the production of distilled spirits, found in the distillery and on the distillery premises." It is pertinent to observe here, that not a word is said touching the ownership of the subjects of forfeiture; that, whereas, elsewhere, stills and property owned by the distiller are mentioned as forfeited, and the right, title, and interest of the distiller in the premises is spoken of, here it is the distillery and distilling apparatus used by him that are mentioned—not necessarily owned by him, but used by him—and all spirits and raw materials found on the premises. The criticism is, doubtless, possible, that, by the terms, "shall forfeit," congress mean, that he, and he only, shall be subjected to loss; and that a person can only forfeit that which he has, or has a right to keep—his own. If this section declared the only forfeiture found in this system of laws, there would be some plausibility in this verbal criticism; but, read as a part of a system, and, especially, in connection with the other sections already adverted to, and with still others not involved in this case, a broader meaning must be given thereto. It means, that he, by his fraud, subjects to forfeiture the property mentioned.

The remaining section referred to in the information is the 19th section of the before-named act of July 20th, 1868. It requires, that "every person making or distilling spirits, or owning any still, boiler, or other vessel used for the purpose of distilling spirits, or having such still, boiler, or other vessel so used under his superintendence, either as agent or owner, or using any such still, boiler, or other vessel, from day to day, make, or cause to be made, true and exact entry, in a book or books to be kept by him," of various particulars touching the kinds and quantities of materials used, and the procurement thereof, the fuel, water and ice purchased, &c., the grain used, and various other particulars tending to show, or enable the officers of the revenue to ascertain, the amount of tax, &c. It then requires the distiller to render an account, and that the distiller, or principal manager of the distillery, shall make oath to such re-

turn in a form prescribed, the book to be always kept at the distillery; and to be always open to the inspection of any revenue officer, &c., and provides that, "if any false entry shall be made, or any entry shall be omitted therefrom, with intent to defraud, or to conceal from the revenue officers any fact or particular required to be, stated or entered in either of said books, or to mislead in reference thereto, or if any distiller, as aforesaid, shall omit or refuse to provide either of said books, or shall cancel, obliterate, or destroy any part of either of such books, or any entry therein, with intent to defraud, or shall permit the same to be done, or such books, or either of them, be not produced when required by any revenue officer, the distillery, distilling apparatus, and the lot or tract of land on which it stands, and all personal property of every kind and description on said premises, used in the business there carried on, shall be forfeited to the United States." I place no especial stress upon the circumstance, that this section begins with the declaration that every person, whether making or distilling spirits, or owning a still, boiler, or other vessel used for the purpose of distilling, shall make, or cause to be made, the entries specified; and yet this is in harmony with the general design, elsewhere shown, to make the owner of machinery and apparatus easily used for defrauding the government, conveniently employed in the perpetration of frauds, which the government was struggling, by the most careful, minute, and stringent precautions, to prevent, responsible, in a large degree, for the manner in which his own machinery and apparatus was used, whether by himself, or by others to whom he should entrust it for use. The observations already made upon some of the other sections, and the terms in which specific things are declared forfeited, are pertinent to this section, both as to real and personal estate; and, in this place, I desire only to add, that, if congress designed to declare such forfeiture, irrespective of the question of ownership, and so as to exclude any inquiry into the title to the property, words more explicit and unqualified could hardly have been employed.

The court cannot be controlled by the supposed or real harshness of these enactments. Considerations founded in the suggestion of hardship are for the legislature. If the law be valid, the courts cannot refuse to carry it into effect. If the law is explicit and clear, construction cannot be permitted to destroy its meaning. Nor is it the duty of courts to apologize for the law; and yet it seems obvious, that, in these laws, in relation to distillers, distilleries, and distilled spirits, there appears, in successive enactments, amendments, change and increase of penalties, punishments, and forfeitures, with greater minuteness and greater comprehensiveness, from time to time, a violent struggle to restrain or regulate and control a business heavily taxed, in which there are extraordinary temptations to fraud, and more than usual facilities for its perpetration. If we now look to the purpose and intent of congress, manifested in the general scheme of the legislation on the subject, we shall find light and aid in the interpretation of the sections which have already been commented upon, and confirming what has been suggested as to each, with especial reference to the question, whether congress intended that property should be forfeited, in any case, without proof of the actual complicity of the owner in the alleged fraud. Not only so, the views already expressed are not only confirmed, but the other provisions of the law go very far to relieve the statutes from any apparent hardship or unreasonableness, in forfeiting the property of one for frauds committed by another.

By the act of July 20, 1868 (15 Stat. 125), the subject of the taxation of distilled spirits was very largely revised, and, by the first section, the intent to hold the owners of distilleries to some responsibility for the use which should be made of them, whether by themselves or others, is declared, by making every proprietor of a distillery, &c., and every person interested in the use thereof, jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom, and the tax is declared a first lien on the spirits distilled, the distillery used for distilling the same, the stills, vessels, fixtures, and tools therein, and on the lot or tract of land whereon the said distillery is situated, together with any building thereon. Section 5. requires every person having in his possession, custody, or control, any still or distilling apparatus set up, to register the same, and declares that any still or distillery apparatus not so registered, with all personal property in the possession or control of such person, and found in the building, yard, or enclosure, shall be forfeited. Here it will be seen that the law takes hold of the property, whoever owns it, and makes it imperative that the owner shall see that the law is observed.

In view of the lien contemplated, and of the forfeitures and penalties pronounced in the act, congress did not fail to see that there might be cases, in which prior valid liens might exist upon the property, in favor of persons who could not control its use, and whose interests ought not to be affected by the sole act of another, nor, also, to see that there might be many cases in which the legal possession might be in holders for a term of years, or having other temporary control, where the owners of the reversion, remainder or other future or contingent estate or interest had no lawful right to interfere with the present use of the property, nor that there might be cases in which the title, or some interest, was held by femes covert, minors or other persons under disability. It was, therefore, determined not to permit the business of

distilling to be carried on, unless, nor until, all impediments to the creation and enforcement of a contemplated lien, as well for penalties as taxes, and all impediments to the enforcement of forfeitures, were removed; and this was important to prevent any suggestion that the law violated the constitution, or its fundamental principles, and, also, to hinder any allegation that property had been forfeited belonging to one who had not consented voluntarily to place it within the operation of, and make it expressly subject to, the law. Accordingly, by the 8th section, it is provided, that no bond of a distiller shall be approved, unless he is the owner in fee, unincumbered by any mortgage, judgment or other lien, of the lot or tract of land on which the distillery is situated, or unless he files with the assessor, in connection with his notice of intention to commence the business, the written consent of the owner of the fee, and of any mortgagee, judgment creditor, or other person having a lien thereon, duly acknowledged, that the premises may be used for the purpose of distilling spirits, subject to the provisions of law, and expressly stipulating that the lien of the United States for taxes and penalties shall have priority of such mortgage, judgment or other incumbrance, and that, in case of the forfeiture of the distillery premises, or any part thereof, the title of the same shall vest in the United States, discharged from any such mortgage, judgment or other incumbrance. What could possibly more distinctly exhibit the intent to look to the property for security, to hold the property to the fulfillment of all the requirements of the law, to forfeit the property and all the title and interest of owner, lessee, and incumbrancers, whenever forfeiture was denounced? Without such intention, what useful purpose does this consent of an owner to the use of the premises as a distillery serve? Is it an idle form? It is suggested that it means consent of the owner to a forfeiture for any cause for which the property of an owner can lawfully be forfeited. Then it is a useless paper. For such a cause the title and interest of an owner may be forfeited as well without as with his consent. It was intended not merely to obviate cavil about the invasion of the rights of the innocent, in violation of the alleged principle, that no man shall suffer for the offense of another, (which, we may be permitted to say, is, by no means, of universal application,) but it was intended to close the mouth of the owner in advance, and meet his claim by the exhibition of his voluntary consent that the use of his property for a distillery shall be subject to the provisions of law, by his express stipulation, (given in advance, and as a consideration for the license granted,) that, in case of forfeiture, that is, of any forfeiture declared by law, the title shall vest in the United States. The act of the owner is voluntary. His stipulation is, in its nature, and, so far as any constitutional question is involved, his stipulation is, in effect, that the forfeitures shall have operation notwithstanding his ownership. The case is not so hard as many forfeitures under revenue laws enforced in cases of smuggling and the like, against the means, instrument, vessel or vehicle by aid of which the law is violated. As in those cases, this law holds the rem, and treats it as guilty, and the owner here has, moreover, voluntarily stipulated, in advance, that it may be so held.

The act then provides for the case of a distillery erected prior to the passage of the act, and held for a term of years only. In such case, the tenant might not be able to procure the consent of the owner of the remainder or reversion. That he may not for that reason be deprived of the lawful use of his distillery, and may have due license to distil, the tenant is permitted to give bond for the full value of the property, to be enforced in case the distillery, &c., should be forfeited, and so, where the fee, or a mortgage or other incumbrance, belongs to a feme covert, infant, a lunatic, or one who is disabled to give such consent, such bond may be given. Why all this, if it is only the interest of the tenant which is, in any event, to be forfeited, for his violation of the law? The construction contended for makes this procurement of consent, and the giving of a bond in lieu thereof, an absurdity.

Then follow various provisions prescribing penalties, declaring liens and the various forfeitures which have above been commented upon, and others. Section 37 is an illustration of one forfeiture declared, in close analogy to many which result from the breach of laws against smuggling. It forbids the removal of spirits after sunset and before sunrise, and declares, that, in case of violation, the spirits, together with any vessel containing the same, and any horse, cart, boat, or other conveyance used in the removal thereof, shall be forfeited to the United States; and section 55, as amended by the 12th section of the said act of 1872, provides, that, where spirits which have been withdrawn and shipped for exportation shall be intentionally relanded within the United States, the spirits, the vessel from which the same were relanded, and all boats, vehicles, horses or other animals used in relanding and removing such spirits, shall be forfeited. No question of ownership is made. It is expected that the owner of property will see to the use made of it, at his peril. Other parts of the act might be referred to, and words might be largely multiplied upon the need of stringent provisions to protect the government from frauds and evasions of the law, and the slight restraint that would exist when only a forfeiture of a holding at will, or at sufferance, or from month to month, or even from year to year, was all that is to be apprehended.

But, enough and more than enough has been said to express the opinion that the trial below proceeded upon an erroneous interpretation of the law governing the rights of the parties. Under the views here expressed, it may not be of any materiality to discriminate

between fixtures and movable articles, tools, implements, and instruments used in the distillery. It is probable that the instruction to the jury to treat the latter as real estate, for the purposes of the trial, grew out of the other instruction, that the property of the owner could not be forfeited unless the owner was a party to the fraud, or in complicity with the distiller therein. Under the views expressed in this opinion, the question raised thereupon is, probably, not material. It is, however, proper to say that, if a case be made in which tools, implements, instruments and personal property found on the premises are forfeited, I see no ground on which, by calling them real estate, or part of the distillery apparatus, they can be withdrawn and saved.

The judgment must be reversed, and a new trial ordered.

[NOTE. Upon the second trial the above decision was substantially followed, and a decree entered for the United States. Case No. 14,-962.]