### HEIDRITTER v. ELIZABETH OIL-CLOTH Co.

*(Circuit Court, D. New Jersey. March 5, 1881.)*

1. **FORFEITURE—PROPERTY USED AS A DISTILLERY.**

    Premises occupied and used as a distillery are liable to forfeiture for the violation of sections 7 and 19 of the act of July 20, 1868, (15 St. 127, 132,) in relation to distillers' bonds and books of account, without regard to the culpability of the owner of the property.

2. **SAME—DECREE OF CONDEMNATION.**

    A decree of condemnation under such forfeiture relates back to the time when the acts were committed which incurred the forfeiture.

3. **SAME—MECHANIC'S LIEN.**

    A mechanic's lien cannot be enforced in a state court, where the premises have been seized by the marshal under such forfeiture proceedings before the claim has been filed.—[ED.

In Ejectment.

*Edward A. Day,* (*W. H. Corbin,* with him,) for plaintiff.

*W. R. Wilson,* (*Brown & Williamson,* with him,) for defendant.

NIXON, D. J. This is an action of ejectment brought to recover the possession of eight lots of land in the city of Elizabeth and state of New Jersey. The parties having formally waived a jury, the case has been tried before the court.

I find as facts in the case:

(1) That the premises in controversy, being the property of one Edward G. Brown, were transferred by the said Brown to Charles L. Sicher, by deed of conveyance bearing date on the twentieth of August, 1872.

(2) That the premises were occupied and used by the said Sicher as a distillery, and were seized by the revenue officers of the United States on the twenty-fourth of January, 1873, for alleged violations of the revenue laws of the United States.

(3) That an information was filed by the United States against the said real estate, *inter alia*, on the fourth of February, 1873, and a decree of condemnation was entered by default, in the district court of the United States for the district of New Jersey, on the twenty-fifth of February, 1873; that a sale thereof took place on the twenty-second of May following, when the said Edward G. Brown became the purchaser for the consideration of $1,500, and that a conveyance was executed and delivered to the purchaser, for the said premises, on the twenty-ninth of May, 1873.

(4) That Edward G. Brown sold and conveyed the same to the Easton Manufacturing Company, on or about December 17, 1874, and that the defendant corporation claims title by sundry *mesne* conveyances since that date.

I further find as facts in the case:

(5) That while the said Charles L. Sicher had the possession of the said premises, and before he received a deed therefor, to-wit, on the twenty-fifth of June, 1872, he commenced the erection of a building thereon.

(6) That on the twenty-first of February, 1873, the plaintiff, Heidritter, filed a claim in the clerk's office of the county of Union for $1,711.22, for materials furnished in the erection of said building from June 21 to August 23, 1872; that on the same day he caused to be issued a summons on said claim, and that on the fourteenth of June following a judgment was entered thereon in the circuit court of the county of Union.

(7) That on the thirteenth of March, 1873, one Ferdinand

Blancke filed another mechanic's lien claim in the same office for $264.35, for materials furnished for the same building from September 7 to December 30, 1872; that a summons was issued thereon March 15, and final judgment entered June 18, 1873.

(8) That on the twenty-fourth of September, 1873, the premises in controversy were sold by the sheriff of the county of Union, under these lien judgments, to the plaintiff in this suit for the consideration of $100, and a deed duly executed to him therefor.

It will be perceived that both parties claim title to the land in dispute through Charles L. Sicher,—the defendant, under and through a deed from the United States marshal, given upon a sale of the property, under a decree of forfeiture and condemnation to the use of the United States, in the district court for New Jersey; and the plaintiff, under a deed from the sheriff of the county of Union, given upon a sale by virtue of two judgments upon lien claims in the circuit court of the county of Union. These facts present for consideration questions of great importance, and involve the construction of the acts of congress in regard to the forfeiture of real estate on account of violations of the internal revenue laws of the United States. I have carefully examined the several sections alleged to have been violated, in the information filed for the forfeiture and condemnation of the land and premises in dispute, and also the mechanic's lien law of the state of New Jersey, under the provisions of which the plaintiff claims to have derived his title, and will briefly state the conclusions of law to which I have arrived.

I am of the opinion—

(1) That while, possibly, by the phraseology of section 44 of the act of July 20, 1868, (which has been re-enacted in the Rev. St. § 3281,) only the right and interest of the owner of inculpated distillery premises can be condemned and forfeited,—no such limitation on the right of forfeiture is found in either section 7 (section 3260, Rev. St.) or section 19 (sections 3303-5, Rev. St.) of the same act, under both of which the property in controversy was condemned by default,—and

that it seems to have been the clear intention of congress, in these sections, to forfeit the thing, when proved to be an offender, without regard to the owner's culpability, or to the interest of outside parties. To this effect was the opinion of the late Judge Woodruff in *U. S.* v. *The Distillery at Spring Valley*, 11 Blatchf. 255, reversing the district court, and I see no good reason to hold differently. See, also, *U. S.* v. *Distilled Spirits, etc.*, 8 Int. Rev. Rec. 81, and *Dobbins' Distillery* v. *U. S.* 96 U. S. 399, where it is declared that the privity or consent of the persons interested in the offending property was not in any degree necessary, in order to include their interests in the forfeiture.

The whole legislation of congress shows a disposition and intention, under different circumstances, to distinguish between forfeiting the thing itself and forfeiting particular rights or interests in the thing. This observation is illustrated by comparing the phraseology used in sections 3260 and 3305 with that employed in sections 3063 and 3281.

2. That while the decree of condemnation in favor of the United States was not made and entered in the district court until February 25, 1873, the real estate was in fact seized by the officers of the revenue on the twenty-fourth day of the preceding January, and the forfeiture to the government related back to the time of the commission of the acts incurring the forfeiture, and the title to the property from that moment vested in the United States. *Henderson's Distilled Spirits*, 14 Wall. 56, in which case the supreme court says: "Where the forfeiture is made absolute by statute the decree of condemnation, when entered, relates back to the commission of the wrongful acts, and takes date from the wrongful acts, and not from the date of the sentence or decree." This has ever been the uniform rule in this country, in which our courts have followed the long-established doctrine of the English courts. *Wilkins* v. *Despard*, 5 T. R. 112; *U. S.* v. *1,960 Bags of Coffee*, 8 Cranch, 398; *Gelston* v. *Hoyt*, 3 Wheat. 311; *U. S.* v. *Distillery*, 21 Int. Rev. Rec. 166; *U. S.* v. *56 Barrels*, 6 Am. Law Reg. (N. S.) 37.

3. That the mechanic's lien law of New Jersey, under the

provisions of which the plaintiff claims to have acquired his title, requires that the claim filed in the clerk's office of the county shall contain the name of the owner of the property at the time of filing, and that the summons issued to enforce the lien shall be against such owner, as well as the builder; and that inasmuch as the owner of the real estate in controversy is divested of all his interest therein, and the title to the same vests in the United States at the time of the commission of the act or acts which cause the forfeiture, it does not seem unreasonable that all subsequent proceedings by leinors to charge the property with the lien, should be held inoperative and void against the United States, unless it were made a party to the proceedings as owner.

4. But, whether this be so or not, I am of the opinion that under the proceedings *in rem*, to give effect to the forfeiture, all persons claiming liens against the *res* were notified to come in and establish their liens; that after seizure by the marshal the property was in the possession of the court for that purpose; that whilst, by such proceedings, the lien upon the *res* was divested by the sale, it attached at once to the fund in court which was realized by the sale; and that the claimants mistook their remedy by going into the state courts to enforce their liens, and should have applied to the district court, where the property was, to be allowed to participate in the proceeds of its sale to the extent of their claims; and that, if their failure so to do has resulted in their loss, no blame can attach to the government, which afforded them ample opportunity for a judicial consideration of their claims. Whether the liens attached to the premises, notwithstanding the forfeiture, it is not necessary here to decide. The question was raised and discussed by Judge Dillon in the case of the *U. S.* v. *Macoy*, 2 Dill. 299, and left by him unadjudicated.

5. Entertaining the foregoing view, I am further of the opinion that the plaintiff is not entitled to recover in this suit, and that a judgment must be entered for the defendant, with costs.