## LOWRY v. RAINWATER et al., Appellants.

**Police Power:** DESTRUCTION OF GAMBLING DEVICES WITHOUT JUDICIAL CONDEMNATION: CONSTITUTIONAL LAW.   A statute which authorizes an officer of police, upon information or personal knowledge that there is any prohibited gaming table or other gaming device kept within his district, to cause the same to be seized and brought before him and publicly destroyed, and makes no provision for judicial condemnation, violates the constitutional prohibitions against unreasonable seizures and against the taking of property without due process of law, and is, therefore, void.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*E. T. Farish* for appellant.

1.   The power conferred by the act is the police power of the State.   It is invoked for the preservation of public morals.   It is of the same nature as the power to suppress nuisances, preserve health, prevent fires and enforcement of quarantine laws.   The safety of society is the paramount law.   Public exigency may require summary destruction, and the police power is of necessity despotic in its character, commensurate to the sovereignty of the State.   Potter's Dwarris on Stat., p. 450; Cooley on Const. Lim., p. 596; *Tanner v. Trustees of Albion,* 5 Hill 121; *Comm. v.*

*Colton*, 8 Gray 488. The destruction of property constituting a common law nuisance, when committed for the public safety or health, is sanctioned. In abolishing a nuisance, property may be destroyed and the owner deprived of it without trial, without notice and without legal compensation. *Manhattan Manfg. Co. v. Van Keuren*, 23 N. J. Eq. 251; *Coe v. Schultz*, 47 Barb. 64; Potter's Dwarris on Stat., 444; Cooley on Const. Lim., 572; *Guillotte v. New Orleans*, 12 La. Ann. 432; *Mayor of Mobile v. Zuille*, 3 Ala. 137. The proceeding authorized by this act is a summary process of abatement, authorized and growing out of the necessity of the case. *Hart v. Mayor of Albany*, 9 Wend. 571.

2. The setting up or keeping of any gaming device is strictly prohibited, and is a highly penal offense in this State. Wag. Stat., § 16, p. 501; § 18, p. 502. And there can be no property in anything *malum per se*, in an obscene book or picture, gambling devices, &c., and the law does not recognize property in obscene prints or immoral instruments. They are public nuisances, and any one may destroy them, taking the risk only of establishing the immoral character of the article destroyed. *Phillips v. Allen*, 41 Pa. St. 481.

3. Without this power the police authorities are powerless to suppress a noxious element in society or effectually reach and destroy the implements and devices with which the gambler plies his avocation. Nor is this proceeding a deprivation of property, without compensation or due process of law, in the sense of the constitution. It is a destruction for the public safety or health (or morals), and really for the prevention of its noxious or unlawful use. This summary process of abatement is authorized by common law, is "due process of law."

*John D. Johnson* for defendant in error.

Section 7 of said act is in contravention of sec-

tions 17 and 18 of the then State constitution, inasmuch as it interferes with the citizen's inviolable right of trial by jury, his right in criminal prosecutions to be heard by himself and counsel, and seeks to deprive him of his property otherwise than by the judgment of his peers or the law of the land.  Wag. Stat., §§ 17, 18, p. 36; *Dartmouth College v. Woodward*, 4 Wheat. 519, 581; *Ames v. Port Huron, &c., Co.*, 11 Mich. 139; *Hibbard v. People*, 4 Mich. 126; *Greene v. Briggs*, 1 Curtis C. C. 332; *Fisher v. McGirr*, 1 Gray 1; *Parsons v. Russell*, 11 Mich. 129; *Ervine's Appeal*, 16 Pa. St. 256; *State v. Staten*, 6 Cold. 244; Cooley's Const. Lim., 356, n. 1; 362, 410, n. 1; *Hall v. Marks*, 34 Ill. 363; *Chandler v. Nash*, 5 Mich. 409; *Flournoy v. Jeffersonville*, 17 Ind. 170; *Poppen v. Holmes*, 44 Ill. 360; *Bullock v. Geomble*, 45 Ill. 218; *Donovan v. The Mayor*, 29 Miss. 247; *Rockwell v. Nearing*, 35 N. Y. 306; *Leavitt v. Thompson*, 56 Barb. 543; *Van Zant v. Waddel*, 2 Yerger 260; *Greene v. James*, 2 Curtis C. C. 187; *State v. Snow*, 3 R. I. 64; *Beekman v. Saratoga R. R. Co.*, 3 Paige 45; *Gray v. Kimball*, 42 Me. 299; *Willis v. Legris*, 45 Ill. 289; Cooley's Const. Lim., 582, 583, 585; Pomeroy Const. Law, §§ 246, 329; Story on Const., § 1954.

HENRY, J.—The petition alleged substantially that on the 19th day of May, 1874, the defendants Watkins, Huthsing, Gardner and Hamilton, at the instigation of defendants Rainwater and Huebler, being by them employed and assisted, with force, &c., broke and entered the house and dwelling of plaintiff in the city of St. Louis, and took and carried away an extension dining table, the property of plaintiff, of the value, &c., and destroyed it to his damage, &c.  Defendants pleaded in justification, that the defendant, C. C. Rainwater, was at that time vice-president of the board of police commissioners of the city of St. Louis and acting president, and, as such, under and in pursuance of the act to establish said board, issued his warrant to defendant, Huebler, an officer of the police force; that

at said time and at the place named in the petition, there was kept a prohibited gaming table, or other gaming device, of which said acting president had received satisfactory information, and that said officers charged with the execution of said warrant did, in pursuance of said act for the purpose of executing said warrant, break open the doors, and, for that purpose, had the assistance of the other defendants as members of the police force, and that, in pursuance of said act of the General Assembly, they caused said prohibited gaming table to be publicly destroyed, and that the wrong complained of by defendant was the above and no other.

On the pleadings the circuit court rendered judgment for plaintiff, which was affirmed at general term, and on appeal to the court of appeals was by that court affirmed, and is now here on appeal from that judgment. Since this case was decided by the court of appeals, that of *McCoy v. Zane* was decided by this court, (65 Mo. 13,) wherein this court intimated an opinion that sections 24, 26 and 27, Wag. Stat., 503, are constitutional. These sections are identical with sections 5, 6 and 7 of the act creating the board of police commissioners for the city of St. Louis, except that sections 24, 26 and 27 of the general statutes confer the power upon any judge or justice of the peace, which by the police commissioners' act, is conferred upon the acting president of the board.

Section 5 of the act creating a board of police commissioners provided that: "Whenever the acting president of said board (in the general statutes 'any judge or justice of the peace') shall have knowledge or shall receive satisfactory information that there is any prohibited gaming table, or other gaming device, kept or used in the city of St. Louis, he shall have power to issue, and it shall be his duty forthwith to issue a warrant directed to some officer of the police force under said board (in the general statutes 'to the sheriff or any constable') to seize and bring before him such gaming table or other gaming device."

Section 6. " The officer charged with the execution of such warrant shall have power, if necessary, to break open doors for the purpose of executing the same, and for that purpose may have the assistance of the whole police force."

Section 7. It shall be the duty .of such acting president (in the general law ' of the judge or justice of the peace ') before whom any such prohibited gaming table or gaming device shall be brought, to cause the same to be publicly destroyed by burning or otherwise."

In *McCoy v. Zane* the constitutionality of the sections upon which the proceedings of Judge Hendricks were based was not considered by this court, NAPTON, J., observing that " in view of the conclusions we have reached in the case, it is unnecessary to determine the questions which have been so extensively discussed by the counsel in regard to the constitutionality of these statutory provisions." It is, therefore, in this State, an open question with which we are, in this case, directly confronted. By the general law a judge, or a justice of the peace, and by the act establishing the board of police commissioners, the acting president of the board may issue his warrant directing a constable, or police officer, to bring before him any gaming table or gaming device alleged to be used for gaming purposes, and, without any further investigation, order its destruction. A legislative act which authorizes an officer, without notice to the owner, or even the semblance of a judicial investigation, to seize and destroy the property of a citizen, cannot be sustained under a constitution which declares that "no State shall deprive any person of life, liberty or property without due process of law." Lord Coke says that the words "*per legem terrae*" mean by due process of law, and being brought into court to answer according to law. In the language of Curtis, J., in *Greene v. Briggs*, 1 Curtis 325, the words " *law of the land* " do not mean any act which the assembly may choose to pass. If it did, the legislative will could inflict a forfeiture of life, liberty or

property without a trial. The exposition of these words as they stand in *magna charta*, as well as in the American constitutions, has been that they require "due process of law," and in this is necessarily implied and included the right to answer to and contest the charge, and the consequent right to be discharged from it unless it be proved." In Cooley's Constitutional Limitations, p. 362, the learned author says: "Nor can a party by his misconduct so forfeit a right that it may be taken from him without judicial proceedings in which the forfeiture shall be declared in due form."

Forfeitures of rights and property cannot be adjudged by legislative acts, and confiscations without a judicial hearing after due notice would be void as not being due process of law. Ib., 305. Judge Selden, in *Weynhauser v. The People*, 3 Kernan, said the words due *process of law* must be understood to mean that no person shall be deprived by any form of governmental action of either life, liberty or property, except as the consequence of some judicial proceeding appropriately and legally conducted. Judge Cooley, in his work on constitutional limitations, speaking of laws to prohibit the sale and manufacture of intoxicating drinks as a beverage, declaring them a nuisance and providing for their condemnation and destruction, remarks that " it is only where, in framing such legislation, care has not been taken to observe those principles of protection which surround the persons and dwellings of individuals, securing them against unreasonable searches and seizures, and giving them a right to trial before condemnation, that the courts have felt at liberty to declare that it exceeded the proper province of police regulation." We doubt if a case can be found in any State in the Union sustaining an act conferring such power upon a judge, justice of the peace, police commissioner or any other officer as the president of the board of police commissioners is invested with, by the sections 5, 6 and 7 of the act establishing that board; similar, but infinitely less obnox-

ious, acts have been held void in Massachusetts, (1 Gray 1,) in Michigan, (4 Mich. 126,) and in other States.     In *Lincoln v. Gray*, 27 Vt. 355, the court observes of their statute for the seizure and destruction of intoxicating liquors: "It would be somewhat remarkable if an enlightened Legislature at the present day should pass a law with an intention to have liquors adjudged forfeited by a judicial tribunal, and ordered to be destroyed, without a trial and without proof that they were intended for sale contrary to law, and we apprehend that the statute does not require us to put the Legislature who passed this act in so awkward a dilemma."     If valid, what we have regarded as guaranties of our rights of property, both in the federal and State constitutions, are unmeaning phrases, calculated to lull us into a sense of security rather than to afford us protection against invasions of what we have regarded as sacred rights.

We are not unmindful of the duty of the courts to weigh carefully all that may be urged in favor of the validity of an act of the legislative department of the government, before declaring it in conflict with the organic law, and only to announce such a conclusion when no doubt is entertained of its correctness.     After a careful examination of the 7th section of the act under consideration, and numerous adjudications of the courts of other States bearing upon the question involved, we are satisfied that it is in conflict with the 14th amendment to the Federal constitution, and, therefore, invalid.

If the 7th section fall the 5th cannot stand, for it authorizes an arbitrary seizure of the property, with no provision made for its disposition.     The officer before whom it may be taken may hold it against the owner indefinitely. He cannot by suit recover it, because, assuming the constitutionality of the section, the seizure of the property, as well as the holding by the officer, would be lawful.     It is " an unreasonable seizure" of private property and a violation of section 23, article 1, of the constitution of 1865.

An act which, under the pretext of preserving public morals, provides for the seizure of private property, should also provide a summary mode of judicial proceedings for determining whether it is the kind of property and was used or held for purposes condemned by the act. Even to authorize the property to be seized and held until in an ordinary action at law for the recovery of his property, the claimant should negative the allegations in the warrant of seizure, would be oppressive and unjust, and not in harmony with the spirit of our constitution. Hence a statute which authorizes a seizure of private property under a warrant issued in pursuance of provisions such as are contained in section 7, should also afford a speedy trial to ascertain whether the property is of the character and is used or held for the purposes condemned by the act, and making provision for duly notifying the owner and giving him his day in court. The constitutional safeguards thrown around the rights of property are not to be demolished in order to suppress gambling or gambling houses. The vices which acts authorizing these summary proceedings propose to eradicate are inconsiderable in comparison with the value of the constitutional guarantees which secure to the citizen his liberty and his property. We recognize the right of the State to adopt and the propriety of a rigorous enforcement of laws for the suppression of gambling and gambling houses, but these laws may be so framed as to harmonize with those constitutional provisions, and hasty and inconsiderate legislation which disregards them cannot be upheld.

We are of the opinion that the 5th section, standing by itself, is in conflict with the constitution, and holding that the 7th section is void, the 5th does not stand alone, and is also void. The cases cited in the discussion of the constitutionality of the 7th section we think fully sustain our views in regard to the 5th section. We express no opinion on that phase of the constitutional question with

respect to the 5th section, discussed by the court of appeals. All concurring, the judgment is affirmed