UNITED STATES v. 246½ POUNDS OF TOBACCO (BARTO, Intervener).

(District Court, D. Washington, N. D. August 14, 1900.)

INTERNAL REVENUE—FORFEITURES—EXISTENCE OF MORTGAGE ON PROPERTY OF CIGAR MANUFACTURER.

Under Rev. St. § 3400, providing that a cigar manufacturer who violates the provisions of the internal revenue law shall, in addition to other penalties, forfeit to the United States all materials, machinery, tools, etc., "which shall be found in his possession, or in his manufactory, and used in his business as such manufacturer, together with his estate or interest" in the building, lot, etc., the existence of a bona fide mortgage on materials or other personal property which is allowed to remain in the possession of the manufacturer, and to be used by him in his business, will not prevent the forfeiture of such property, the risk of which the mortgagee must be held to have assumed, as the provision for forfeiture of such property is not limited, like that relating to real estate, to the interest of the offender therein.

On exceptions to petition of intervention filed in proceedings to condemn and forfeit property for a violation of the internal revenue laws.

E. E. Cushman, Asst. U. S. Atty., for the United States.
Tucker & Hyland and J. J. McCafferty, for intervener.

HANFORD, District Judge. This is a proceeding upon an information filed by the United States district attorney to condemn certain tobacco and other property as forfeited to the United States by force of section 3400, Rev. St. U. S. The information charges that all of said property was seized by a deputy collector of internal revenue, because found in the possession of one J. C. Zonig, who theretofore was engaged in the business of manufacturing cigars without having paid the special tax as a cigar manufacturer, and without having given bond as such. The intervener claims a lien upon all of said property by virtue of a chattel mortgage given to her by Zonig to secure a loan of money made to him before the infraction of any law in connection with his business as a cigar manufacturer. In her com-

plaint the intervener alleges that the mortgage was taken in good faith for an actual loan of money, and that she was not at any time cognizant of any neglect on the part of Zonig to conform to the requirements of the statutes in the conduct of his business. The United States attorney has filed exceptions to the claim set forth in the intervener's complaint, and the case has been argued and submitted upon the question raised by said exceptions whether the lien created by the mortgage has been extinguished by the forfeiture.

The material part of the statute upon which this proceeding is founded, reads as follows:

"Sec. 3400. Every manufacturer of cigars who removes or sells any cigars without payment of the special tax as a cigar-manufacturer, or without having given bond as such, * * * shall, in addition to the penalties elsewhere provided in this title for such offenses, forfeit to the United States all raw material and manufactured or partly manufactured tobacco and cigars, and all machinery, tools, implements, apparatus, fixtures, boxes, barrels, and all other materials which shall be found in his possession, or in his manufactory, and used in his business as such manufacturer, together with his estate or interest in the building or factory, and the lot or tract of ground on which such building or manufactory is located, and all appurtenances thereunto belonging."

Consistently with the purpose indicated by the words of the act, to punish the offending manufacturer by forfeiture of property, the law should not be extended so as to affect the property or rights of innocent persons. According to the statute, the manufacturer must forfeit, and manifestly he can only forfeit, property which he owns, or his right to the possession or use of property. U. S. v. 398 Barrels of Distilled Spirits, Fed. Cas. No. 16,504; U. S. v. 372 Pipes Distilled Spirits, Id. 16,505. On the other hand, a literal reading of the statute indicates a purpose to discriminate so as to make the forfeiture of personal property absolute, the mere possession of such property by the offender, or the use of it in connection with his business, being sufficient to close any controversy as to the ownership, or as to rights of everybody respecting the same; but real estate, including the building or factory, to be subjected only to forfeiture of the offender's estate or interest therein. The purpose first suggested, in so far as it restricts the forfeiture of personal property, is incompatible with the second; therefore it is obvious that, to interpret the law according to the true intent of congress, the general spirit and policy of the internal revenue statutes and the rules for interpretation of ambiguous statutes must be taken into consideration. The laws providing for forfeiture by violators of revenue laws are not to be governed by the rule of strict construction applied to penal statutes in general, but are to have a reasonable construction; and the difficulty here is to be overcome by giving section 3400 a reasonable construction harmonious with the provisions of the statutes relating to forfeitures for other offenses. The sixteenth section of the act of February 8, 1875, entitled "An act to amend existing customs and internal revenue laws, and for other purposes" (1 Supp. Rev. St. U. S. [2d Ed.] p. 60), is similar in scope and purpose to section 3400. In the case of U. S. v. Stowell, 133 U. S. 1–20, 10 Sup. Ct. 244, 33 L. Ed. 555, it was decided by the supreme court that the provisions of the revenue laws which impose penalties and forfeitures are to be construed fairly and reasonably so as to carry

out the intention of congress, instead of being construed strictly in favor of defendants; and in the same case a construction was given to that part of section 16 of the act of February 8, 1875, providing for the forfeiture of personal property found in an illicit distillery, or in any building, room, or yard, or inclosure connected therewith, and used with or constituting a part of the premises, as follows:

"It will be convenient, in the first place, to ascertain the construction and effect of the provisions of section 16 of the act of 1875, by which, if any person carries on the business of a distiller without having given bond, or with intent to defraud the United States of the tax on the spirits distilled by him, he shall be punished by fine and imprisonment, and there shall be forfeited to the United States: (1) 'All distilled spirits or wines, and all stills or other apparatus fit or intended to be used for the distillation of spirits, owned by such person, wherever found;' (2) 'all distilled spirits or wines and personal property, found in the distillery, or in any building, room, yard or enclosure connected therewith, and used with or constituting a part of the premises;' (3) 'all the right, title and interest of such person in the lot or tract of land on which such distillery is situated;' (4) 'all right, title and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same,' * * * The second provision forfeits 'all distilled spirits or wines and personal property, found in the distillery, or in any building, room, yard, or enclosure connected therewith, and used with or constituting part of the premises.' * * * The first provision is restricted in point of ownership, and not in point of place. The second provision is restricted in point of place, and not in point of ownership. Nor can the second provision be restricted to property fit or intended to be used for the distillation of spirits; for, while the first provision contains such a restriction as regards apparatus, the second provision omits all requirements of fitness or intention for the unlawful use. Each of the two provisions clearly defines its own restrictions, and the restrictions inserted in the one cannot be imported into the other. The second provision must, therefore, extend to some property not owned by the distiller, and to some property not fit or intended to be used in distilling spirits. In order to give it such effect as will show any reason for its insertion in the statute, it must be construed to intend, at least, that all personal property which is knowingly and voluntarily permitted by its owner to remain on any part of the premises, and which is actually used, either in the unlawful business, or in any other business openly carried on upon the premises, shall be forfeited, even if he has no participation in or knowledge of the unlawful acts or intentions of the person carrying on business there; and that persons who intrust their personal property to the custody and control of another at his place of business shall take the risk of its being subject to forfeiture if he conducts, or consents to the conducting of, any business there in violation of the revenue laws, without regard to the question whether the owner of any particular article of such property is proved to have participated in or connived at any violation of those laws. * * * The significance of the omission of all restrictions in point of ownership and in point of fitness or intention for the unlawful use in the second provision concerning personal property is clearly brought out by contrasting that provision with the provisions immediately following it, concerning real estate. The third provision forfeits only 'all the right, title, or interest of' the distiller 'in the lot or tract of land on which the distillery is situated.' And the fourth provision forfeits only 'all right, title, and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be carried on, or has connived at the same.' Congress has thus clearly manifested its intention that the forfeiture of land and buildings shall not reach beyond the right, title, and interest of the distiller, or of such other persons as have consented to the carrying on of the business of a distiller upon the premises."

In her plea the intervener does not allege that she was ignorant of the fact that the property mortgaged was in the possession of Zonig

at the time of the commission of the offense, nor does she deny that she voluntarily permitted it to remain in his possession, knowing that it was the stock and implements necessary to be used in carrying on his business as a cigar manufacturer. The mortgage itself shows that the parties intended that the property should remain in the possession of and be used by Zonig in his business. By her plea, the intervener presents herself before the court as an innocent party, and she will probably lose a part of the money which she loaned to Zonig, in consequence of the destruction of her lien. Therefore, in view of her situation, an absolute forfeiture of the property will work a hardship which I would rather avoid if I could see any way to do so consistently with due respect for the law. But the case of U. S. v. Stowell is so nearly analogous to the case in hand that I must regard it as an authoritative declaration of the principles which must control the decision of this case. It is essential to good government that laws be, as nearly as possible, uniform and certain in their operation. To attain this object is the paramount duty of courts, and, to insure justice without partiality, precedents and rules which have been approved by solemn decisions of the court of highest authority in the land must not be ignored. For the reasons stated, and upon the authority of the decision of the supreme court in the case of U. S. v. Stowell, I hold the plea in the intervener's complaint to be insufficient, and the exceptions thereto are sustained.