### NATIONAL BOND & INVESTMENT CO. v. GIBSON, Sheriff.

(District Court, D. Kansas, First Division. February, 1925.)

No. 2701.

1. **Courts ⊙≈361, 366(1)—Decision of state court that state statute is constitutional is conclusive as to state Constitution, but not as to federal Constitution.**

Decision of state court that state statute is constitutional is conclusive in so far as state Constitution is concerned, but is merely persuasive that statute does not violate federal Constitution.

2. **Action ⊙≈16—Admiralty ⊙≈26—Distinction between prosecutions for violating criminal laws, and proceedings under revenue, libel, or admiralty laws, stated.**

Prosecutions for violations of criminal laws are in personam, while in proceedings under revenue laws, or libel or admiralty laws, property is forfeited to government by proceeding in rem; the impersonal thing itself being regarded as offender.

3. **Nuisance ⊙≈65—Legislature cannot make nuisance of thing not in nature nuisance.**

It is beyond constitutional power of Legislature to make anything not in its nature a nuisance a common nuisance by mere declaration that it is so.

4. **Forfeitures ⊙≈3—Rights of owner, part owner, or lienor in automobile used in violation of criminal laws, to his knowledge, may be forfeited.**

Where owner, part owner, or lienor of automobile knows, or has reasonable cause to believe, that it is being used, or may be used in committing crime, he may be punished by forfeiture of his property or interest therein.

5. **Constitutional law ⊙≈247, 303—Intoxicating liquors ⊙≈245 — State statute, forfeiting wrongdoers' interest in automobile used to transport intoxicating liquors, and protecting rights of innocent chattel mortgagee, held valid.**

State statute, forfeiting interest of wrongdoer in automobile used in transporting intoxicating liquors in violation of state laws, and protecting rights of innocent chattel mortgagee, would be valid exercise of state's police power, and would not violate Fourteenth Amendment.

6. **Constitutional law ⊙≈303—Intoxicating liquors ⊙≈245—Statute forfeiting automobile used in unlawfully transporting intoxicating liquor, including rights of innocent chattel mortgagee, held invalid, as taking property without just compensation.**

Laws Kan. 1919, c. 217 (Rev. St. Kan. 1923, 21—2162 to 21—2166), declaring automobiles unlawfully transporting intoxicating liquor to be nuisances subject to forfeiture, construed by state court to include forfeiture of rights of innocent chattel mortgagee, is not reasonable exercise of state's reserved police power, but is taking of private property without just compensation, in violation of Fourteenth Amendment.

At Law. Replevin by the National Bond & Investment Company against C. S. Gibson, Sheriff of Lyon County, Kan. Judgment for plaintiff.

Mosman, Rogers & Buzard, of Kansas City, Mo., for plaintiff.

Charles B. Griffith, Atty. Gen., J. G. Egan, Asst. Atty. Gen., and Roland Boynton, Co. Atty., of Emporia, Kan., for defendant.

POLLOCK, District Judge. This is an action in replevin of an automobile, brought by plaintiff, a chattel mortgagee, against defendant, sheriff of Lyon county. The facts are stipulated by the parties, and briefly stated, in so far as material to decision here, are as follows:

One Grace Miller purchased this car in question from the agency of the Studebaker people in the city of Topeka, the agents of the motor company taking back a valid chattel mortgage to secure a series of install-

ment notes given as evidencing a part of the purchase price of the car. These notes were duly indorsed, sold, and delivered to plaintiff, an Illinois corporation. The chattel mortgage was also duly assigned to plaintiff, which assignment was timely recorded. Unknown to plaintiff, in some manner not shown by the record, the car came into the hands of one Switzer, who employed it in the transportation of some intoxicating liquors within the state and Lyon county. For this violation of the state laws he was arrested, the car was seized under a warrant, and was about to be sold by the sheriff of the county under the provisions of chapter 217, Laws of Kansas 1919. However, before the car had been seized by defendant, default in payment of a portion of the installment notes secured by the chattel mortgage had occurred, and plaintiff had been endeavoring to find the car in order to enforce its mortgage lien thereon. That plaintiff was in entire ignorance of the fact that Switzer had the car, or was using or intending to use the same for the purpose of violating any law of the state or nation, is admitted; and it is freely conceded plaintiff, its agents, servants, and employés are entirely blameless of any violation of a law of the state, either directly or indirectly, and are also innocent of the fact the laws of the state had been, were, or would be in any manner violated by the use of the car.

In this condition of the record, plaintiff contends the confiscation and sale of the car under the terms of chapter 217, Laws of Kansas 1919, is unwarranted, unlawful, and void, because violative of its right secured by the national Constitution and laws of the United States. He therefore contends it has the right to recover its car, title to which was transferred to it by virtue of the chattel mortgage. This contention is based on two propositions, as follows: (1) That the provisions of chapter 217, Laws of Kansas 1919, under the terms of which the property of a citizen entirely guiltless of any wrongdoing may be confiscated by the state, is not a reasonable exercise of the police power of the state, but is violative of the Constitution of the United States; (2) because said act in providing for the seizure and confiscation of a car in which intoxicating liquors are being transported is opposed to the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) as to the power of the state and nation, acting under the Eighteenth Amendment to the National Constitution, and, being in conflict with the national law, that law, and not the state law, must control.

6 F.(2d)—19

Of these questions in their order. The act of the state involved reads (Rev. St. 1923) as follows:

"Sec. 21—2162. All automobiles, vehicles and other property used in the transportation or carrying of intoxicating liquors into this state or in carrying and transporting intoxicating liquors from one place to another within this state are hereby declared to be common nuisances.

"Sec. 21—2163. Upon the filing of a complaint or information charging a common nuisance as above defined, a warrant shall be issued, authorizing and directing the officer to whom it is directed to arrest the person or persons described in said complaint or information or the person or persons using the automobiles, vehicles and other property for the transportation of intoxicating liquors into this state, or for the transportation or carrying of intoxicating liquors from one place to another within this state, and to seize and take into his custody all such automobiles, vehicles and other property so used which he may find, and safely keep the same subject to the order of the court. In said complaint or information it shall not be necessary to accurately describe the automobile, vehicle or other property so used, but only such description shall be necessary as will enable the officer executing the warrant to identify it properly."

Section 21—2165, following, provides for the destruction of all intoxicating liquors seized, but any property used in their transportation and defined to be a common nuisance under section 21—2162 above quoted, it shall adjudge forfeited so much thereof as the court shall find was such common nuisance, and shall order the officer in whose custody it is to sell the same publicly, and shall pay the proceeds into court to await the further order of the court; and the proceeds, after the paying of expenses of the action shall be turned over to the school fund of the state.

[1] There can be no question, but that this statute in express terms, as construed by the Supreme Court of the state, does authorize the doing of the precise thing of which plaintiff complains in this case. The Supreme Court of the state has directly upheld the same. State v. Peterson, 107 Kan. 641, 193 P. 342; State v. Stephens, 109 Kan. 254, 198 P. 1087. That these decisions are conclusive, in so far as any claimed violation of the Constitution of the state is concerned, there can be no question. The only question that may be considered is: Does the act, as construed by the Supreme Court of the state,

render it obnoxious to any provision of the federal Constitution? If so, the decision of the Supreme Court of the state is merely persuasive, but not conclusive, of this question.

Of course, the reliance of counsel for the defendant is in the exercise of the police power of the state, a power properly reserved to the states in the beginning, but in these latter years a reservation which the government appears to have but little reluctance in trespassing upon. If there are limitations upon the exercise of the reserved police power of the states of this nation, and of necessity there should be some limitation some place, such limits are declared by the authorities only in the most general terms, and the difficulty, if not the utter impossibility, of establishing any specific and fixed boundary to the exercise of this most uncertain of all governmental powers has given rise to unending litigation, and ever will so long as our present form of government lives?

It is true, as contended by defendant, the national government, in the enforcement of its revenue laws, has been sustained by the courts in the exercise of a confiscatory statutory provision similar to that of the state involved in this case. See Goldsmith-Grant Co. v. United States, 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376. However, Mr. Justice McKenna, delivering the opinion in that case, at least intimates, if the question were one of first impression, untrammeled by precedent, the view of the case taken by the court might be to the contrary. "If the case were the first of its kind, it and its apparent paradoxes might compel a lengthy discussion to harmonize the section with the accepted tests of human conduct. Its words, taken literally, forfeit property illicitly used, though the owner of it did not participate in or have knowledge of the illicit use. There is strength, therefore, in the contention that, if such be the inevitable meaning of the section, it seems to violate that justice which should be the foundation of the due process of law required by the Constitution. It is, hence, plausibly urged that such could not have been the intention of Congress, that Congress necessarily had in mind the facts and practices of the world, and that, in the conveniences of business and of life, property is often and sometimes necessarily put into the possession of another than its owner; and it follows, is the contention, that Congress only intended to condemn the interest the possessor of the property might have to punish his guilt, and not to forfeit the title of the owner who was without guilt."

[2] What, if any, difference in principle lies between the government proceeding under its broad, general, and absolutely essential powers to levy and collect its revenues, upon which its very continued national existence depends, and the power of the state to so enact, proceeding under its reserve police powers, is a question of much concern. In this respect, it may be noted, the statute of the state relied upon to justify the seizure and forfeiture of the car in question, inclusive of the interest of plaintiff as an innocent mortgagee, is a part of the criminal laws of the state, and the seizure and forfeiture of the car is employed as a means of prohibiting the commission of the crime. That being true, it is the punishment and prevention of crime against which the police power of the state is directed. In all such cases defendant is looked upon as the wrongdoer, the party to be punished, and all such actions are actions in personam, whereas, under the revenue laws of the country, or under the libel laws of the government, and admiralty and other cases, the proceeding is regarded as one in rem; that is, the impersonal thing itself is regarded as the offender. Thus, in Goldsmith-Grant Co. v. United States, supra, Mr. Justice McKenna says:

"But whether the reason for section 3450 be artificial or real, it is too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced. Dobbins' Distillery v. United States, 96 U. S. 395, is an example of the rulings we have before made. It cites and reviews prior cases, applying their doctrine and sustaining the constitutionality of such laws. It militates, therefore, against the view that section 3450 is not applicable to a property whose owner is without guilt. In other words, *it is the ruling of that case, based on prior cases, that the thing is primarily considered the offender.* And the principle and practice have examples in admiralty. The Palmyra, 12 Wheat. 1. The same principle was declared in United States v. Stowell, 133 U. S. 1. The following cases at circuit may also be referred to: United States v. Mincey, 254 F. 287 (1918); Logan v. United States, 260 F. 746 (1919); United States v. One Saxon Automobile, 257 F. 251; United States v. 246½ Pounds of Tobacco, 103 F. 791; United States v. 220 Patented Machines, 99 F. 559."

And for this reason any citizen of the country can make seizure of an article or any property condemned under the revenue laws of the nation used to defraud the government of its dues, and if the government adopts the seizure and proceeds to the con-

demnation of the property, the act of the seizure by a private citizen is thereby justified, for that no injury is done any one in his person or personal rights. In Taylor et al. v. United States, 3 How. 197, 11 L. Ed. 559, Mr. Justice Story, delivering the opinion for the court says:

"In the course of the argument in this court, an objection was insisted on, that the seizure itself, upon which the information is founded, was irregularly and improperly made; it having been made by the collector of the customs of the port of Philadelphia, when it should have been made by the collector of the customs of the port of New York. * * * But the objection itself has no just foundation in law. At the common law any person may, at his peril, seize for a forfeiture to the government, and, if the government adopts his seizure, and institutes proceedings to enforce the forfeiture, and the property is condemned, he will be completely justified. So that it is wholly immaterial in such a case who makes the seizure, or whether it is irregularly made or not, or whether the cause assigned originally for the seizure be that for which the condemnation takes place, provided the adjudication is for a sufficient cause. This doctrine was fully recognized by this court in Hoyt v. Gelston, 3 Wheat. 247, *310, and in Wood v. United States, 16 Pet. 342, 358, 359."

[3] Of the proceedings in the seizures made by the general government in revenue cases and under its admiralty laws, etc., the same being in rem, and not in personam, is in all the authorities kept to the foreground, and forms the very foundation for the steps taken under the laws which are by the court upheld and justified. In no federal case I have examined do I find any intimation such a proceeding could or would be justified in a criminal prosecution or other action in personam. True, the state statute in question declares the car employed by the offending user in the transportation of intoxicating liquors to be a common nuisance, and a common nuisance may be abated; but it is beyond the constitutional power of the Legislature to make anything not in its nature such a nuisance a nuisance by a mere declaration it is so.

[4] Now, in all cases in which the owner, part owner, lienor, or other person interested in a car knows it is being used, or who has reasonable cause to believe the same is being used, or will be used, in the commission of crime, such person may justly be said to be an actor, or an aider or abettor of the violation of the law, and for his conscious guilt in so doing may be punished by a forfeiture of his property or interest therein; but in such case the lawmaking power is not put to the doubtful expedient of declaring that not in any sense a nuisance in fact to be a nuisance in law.

[5, 6] Is, therefore, that portion of chapter 217, Laws of Kansas 1919, same being section 21—2162, Revised Statutes Kansas 1923, a reasonable exercise of the reserved police power of the state, when employed to confiscate and forfeit the interest of one entirely innocent of any wrongdoing in lawful property, not in its natural use adapted to the commission of crime, as are gambling devices and machines, but in ordinary use and purpose are innocent, and only become a nuisance when being actually employed in the commission of crime, or, does it violate the provisions of the Fourteenth Amendment to the federal Constitution?

In Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385, Mr. Justice Brown dealt with the power of a state to condemn and destroy summarily nets being used illegally in the taking of fish, in violation of the law of the state of New York. In defining what acts fall within the police power of the state it is said: "The extent and limits of what is known as the 'police power' have been a fruitful subject of discussion in the appellate courts of nearly every state in the Union. It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. * * * To justify the state in thus interposing its authority in behalf of the public, it must appear—First, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations; in other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

The final determination of the court in that case seems to be bottomed upon two facts: First, that the nets were taken in the actual work of doing the prohibited thing; second, they were of a comparatively

small value. Many cases of the attempted exercise of the police power by states in matters of larger concern were declared an abuse of the power and void. Railroad Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527; Chy Lung v. Freeman, 92 U. S. 275, 23 L. Ed. 550; Henderson v. New York, 92 U. S. 259, 23 L. Ed. 543; Rockwell v. Nearing, 35 N. Y. 302; Ieck v. Anderson, 57 Cal. 251, 40 Am. Rep. 115; Dunn v. Burleigh, 62 Me. 24; King v. Hayes, 80 Me. 206, 13 A. 882; Lowry v. Rainwater, 70 Mo. 152, 35 Am. Rep. 420; State v. Robbins, 124 Ind. 308, 24 N. E. 978, 8 L. R. A. 438; Ridgeway v. West, 60 Ind. 371.

To whatever extent a state may go in dealing with, confiscating, and destroying articles such as may be generally or necessarily employed in the commission of crime, for the better enforcement of the laws or protection of the public, a glance at the act here in question will disclose no such purpose on the part of the state, for that the agency here denominated a nuisance is not under the act destroyed or abated, as is the custom with property condemned as a common nuisance, but the same is forfeited, sold, and the proceeds employed in paying the expenses of the litigation, and the balance turned over into the school fund of the state, leaving the agency declared a nuisance still in existence, to be again so used if it shall fall into the hands of a law violator.

The case of Shawnee Nat. Bank v. United States, 249 F. 583, 161 C. C. A. 509, from the Circuit Court of Appeals of this circuit, considers the true construction and effect of an act of Congress made "for the suppression of the traffic in intoxicating liquors among Indians" (39 Stat. 970), which provides as follows:

"That automobiles or any other vehicles or conveyances used in introducing, or attempting to introduce, intoxicants into the Indian country, or where the introduction is prohibited by treaty or federal statute, whether used by the owner thereof or other person, shall be subject to the seizure, libel, and forfeiture provided in section 2140 of the Revised Statutes of the United States." Section 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4141a).

While it will be seen this congressional act, like that of the state involved here, makes no exception of the rights of an innocent chattel mortgagee, yet that court held such an interest was protected by the law from seizure and forfeiture by the government. Carland, C. J., delivering the opinion for the court, said:

"Counsel for the bank claim that the statute above quoted simply forfeits the interest of the introducer of the spirituous liquor in the automobile; therefore, it not appearing that the bank had anything to do with the introduction of the liquor, its interest could not be forfeited. The United States District Court for the District of Montana, in the case of United States v. Two Gallons of Whisky et al., 213 F. 986, decided that the above statute could not be held to forfeit property which had been borrowed by the person who introduced the liquor into the Indian country; the owner of the property not having any knowledge or information as to the use to which the property was to be put. United States v. 246 Pounds of Tobacco (D. C.) 103 F. 791.

"In cases under revenue statutes, a mortgagee is regarded with greater favor than the owner. United States v. Two Barrels Whisky, 96 F. 497, 37 C. C. A. 518. Where a smuggling statute authorized the forfeiture of any vessel 'whose master should knowingly violate the act,' it was held that a master of a vessel, who was appointed by less than a majority of the ownership of the vessel, could not, by violating the law, subject the majority interest to forfeiture. The Calypso, 230 F. 962, 145 C. C. A. 156. In United States v. 372 Pipes of Spirits, 5 Sawyer, 421, Fed. Cas. No. 16,505, under a statute which authorized the forfeiture of 'spirits owned by such person,' it was decided that a mortgagee would be protected to the extent of his debt. In United States v. Stowell, 133 U. S. 1, 10 S. Ct. 244, 33 L. Ed. 555, it was decided that the interest of the mortgagee on realty upon which an illicit still had been established would not be forfeited, where the mortgage was taken prior to the establishment of the still. It is also a principle of law and natural justice that statutes will not be held to forfeit property, except for the fault of the owner or his agents, unless such a construction is unavoidable. Peisch v. Ware, 4 Cranch, 347, 2 L. Ed. 643; United States v. 33 Barrels of Spirits, 1 Abb. U. S. 311, Fed. Cas. No. 16,470; Clinkenbeard v. United States, 21 Wall. 65, 22 L. Ed. 477.

"There are cases cited upon other statutes which seem to support the contention of counsel of the United States, but we think justice requires us to adopt the view presented by counsel for the bank. An examination of the decisions under different statutes of the United States providing for the forfeiture of property shows that there are two classes of statutes; one authorizing forfei-

ture irrespective of ownership, and the other making ownership of the wrongdoer a necessary element. Heidritter v. Elizabeth Oil Cloth Company (C. C.) 6 F. 138, affirmed 112 U. S. 294, 5 S. Ct. 135, 28 L. Ed. 729."

Section 2140, Revised Statutes (Comp. St. § 4141), under which the forfeiture was attempted in that case, reads:

"If any * * * has reason to suspect or is informed that any white person or Indian is about to introduce or has introduced any spirituous liquor or wine into the Indian country in violation of law * * * may cause the boats, stores, packages, wagons, sleds, and places of deposit of such person to be searched; and if any such liquor is found therein, the same, together with the boats, teams, wagons, and sleds used in conveying the same, and also the goods, packages, and peltries of such person shall be seized and delivered to the proper officer and shall be proceeded against by libel in the proper court, and forfeited, one-half to the informer and the other half to the use of the United States."

Again Judge Carland said in the opinion:

"It is claimed by counsel for the United States that the above statute treats the automobile in this case as the offender without any regard whatsoever to the personal misconduct or responsibility of the owner thereof, and therefore, as the automobile was found guilty, forfeiture followed as a matter of course, regardless of the rights of the bank under its mortgage, and that, if this position is not correct, still, as the trial court forfeited the automobile and the evidence is not in the record, we must presume that there was evidence that the bank knew, or had good reason to know, the use to which the automobile was being put. This last contention, of course, is inadmissible, for the reason that the court found that the bank had a valid lien upon the automobile, and, if we indulge in any presumption as to the connection of the bank with the introduction of the liquor into the Indian country, we must presume, in the absence of any evidence or finding to the contrary, that the bank had nothing to do with it."

Subsequent section 21—2164 to 21—2166 provide for notice to all parties in interest in the automobile to appear on a day certain and defend such interest before the judgment of forfeiture is entered or enforced. If the true intent of the entire act is that a party in interest, such as an innocent chattel mortgagee, as is the plaintiff in this case, may have his rights protected to the extent of his claim against the car under the mortgage, and only the interest of the wrongdoer or wrong user of the car therein is to be forfeited to the state, no valid objection to such an enactment appears, and the power of the state to so enact in the prosecution of a defendant for the commission of a criminal offense is apparent, and well within the police power of the state, and to such extent goes the national law enacted under the provisions of the Eighteenth Amendment to our national Constitution. But when property, such as an automobile, in and of itself innocent and lawful, and in no sense whatever specially adapted to the commission of crime, more than any other species of conveyance, and when such property is employed only for a wrongful purpose in carrying out the criminal intent of the wrongdoer, is incumbered by a valid chattel mortgage in the hands of an entirely innocent holder as security for an indebtedness due, is by the law of the state stricken down without power or right to impose the defense of an innocent holder for value, and such property is forfeited by the state, and in a sale of the car the proceeds are confiscated by being turned over into the school fund of the state, such a proceeding is so utterly repugnant to the natural justice of the case, and to our ideas of the protection by the law afforded to the innocent owner of lawful property rights, that in my judgment the exercise of such power by the state does not fall within the reasonable exercise of the reserve police power of the state, but, on the contrary, is the taking of private property without just compensation to the owner, in violation of our rights as guaranteed by the Fourteenth Amendment to the national Constitution.

It follows judgment will go for the plaintiff for the car in question, or to the extent of the recovery of its interest therein.

It is so ordered.