[No. 14815. Department One. July 29, 1918.]

THE STATE OF WASHINGTON, *Appellant*, v.
HISAKACHI UMAKI *et al., Respondents.*[1]

FISH—OFFENSES—UNLAWFUL FISHING — FORFEITURE OF PROPERTY.
Under Rem. Code, §§ 5150-40, 5150-41, providing that all appliances
used in illegal fishing shall be abated as nuisances, shall be subject
to execution for payment of fines imposed upon the owners, and
may be seized and forfeited to the state, boats and appliances so
used may be seized and confiscated although the persons tried and
convicted of illegal fishing were not the owners, and the owners in-
tervened and showed that they had not authorized the use of the
boats in American waters, and were innocent of wrongdoing.

Appeal from a judgment of the superior court for
Whatcom county, Hardin, J., entered December 29,
1917, upon findings in favor of intervening defendants,
in proceedings to forfeit boats and other property used
in unlawful fishing, after a trial to the court. Re-
versed.

*W. P. Brown* and *Loomis Baldrey,* for appellant.
*Hadley & Abbott,* for interveners and respondents.

MITCHELL, J.—Hisakachi Umaki, I. Tabato, C. Ikem-
iza and T. Ikemiza were apprehended in Whatcom
county for violation of the "Fisheries Code of Wash-
ington," and certain of them were tried and convicted
in the superior court. At the time of the arrest, two
boats and the articles used and found therein—which
are the cause of this controversy—were seized. A
return was made and filed by L. H. Darwin, state fish
commissioner, of the seizure, to and in the superior
court of said county, demanding that all the property
should be forfeited to the state. The British Columbia
Packers' Association, of British Columbia, intervened
in the cause, alleging it was the owner and holder of

[1]Reported in 174 Pac. 447.

valid mortgage liens upon the boats sought to be confiscated, and that it was not aware the boats were used in illegal fishing and did not authorize, connive at, encourage or consent to the use of said boats for illegal fishing. K. Tomo and C. Uyeno, of British Columbia, also intervened and claimed they were the owners of the boats and other personal property seized by the state; that the boats were subject to mortgages to the British Columbia Packers' Association; that they had warned the defendants not to take the boats into American waters; that they did not authorize, connive at, encourage or consent to the use of said boats for illegal fishing and were wholly innocent of any wrongdoing. The mortgagee and owners each prayed that the petition for forfeiture be denied. Upon trial, the court made findings to the effect that defendants in the criminal case had been tried and found guilty; that the boats and other personal property had been seized and petitions for confiscation duly filed; and then further found as to the intervening owners and mortgagee the facts to be as they had alleged in their respective petitions. Conclusions were drawn and judgment entered in favor of interveners, freeing and discharging the boats and other property seized from any claim on the part of the state and directing a return thereof to the owners. The state appeals.

We are immediately interested in § 40 and a part of § 41 of the fisheries code (ch. 31, Laws of 1915, p. 81, §§ 5150-40 and 5150-41, Rem. Code), as follows:

"Sec. 40. Any fishing appliance or part thereof found in the waters of this state wherein the same are prohibited, the same being placed therein for the purpose of illegal fishing is hereby declared a public nuisance and shall be subject to abatement as a public nuisance, and it shall be the duty of the commissioner to enforce the provisions of this section; and any and all appliances used in violation of any of the provi-

sions of this act, viz.: boats, traps, nets, fish-wheels or other appliances, shall be subject to execution for the payment of any fines imposed on the owner thereof. Such appliance may be seized by the commissioner and may be forfeited to the state, and the superior courts of the state of Washington shall have exclusive jurisdiction of all such cases.

"Sec. 41. The presence in any of the waters of this state of any craft of any nature whatever equipped with any of the appliances required to be licensed by the laws of this state for the taking of fish, or of any fishing appliance for which licenses are required shall be *prima facie* evidence that the owners thereof are engaged in fishing.

"Any person who shall engage in fishing with any appliance whatsoever without having first obtained a license or made lawful application therefor shall be deemed guilty of a misdemeanor and the commissioner is hereby authorized to seize said appliance and the same shall be confiscated to the state."

The owners and the mortgagee of the property defend the judgment of the trial court on account of decisions of other courts on this subject and also because of the language of the sections of the fisheries code.

First, is the case of *United States v. Two Barrels of Whisky,* 96 Fed. 479, in which the court, after a painstaking review of the cases, some deciding for and others against forfeiture, refused judgment of confiscation of that portion of the property covered by the statute, in possession of the wrongdoer at the time of the commission of the criminal act, which belonged to another person, but upon the expressed grounds: "In the case at bar it is admitted that this property was in *possession of the wrongdoer 'without the consent and knowledge of the claimant.'* " The opinion refers to the sayings of judges in other similar cases as follows: "It is expected that the owner of property will see to the uses made of *it at his peril*"; and: "The court is also of opinion that the removal for

which the act punishes the owner with forfeiture of the goods must be made with his consent or connivance, or of that of some person employed or *trusted by him.*"

The case of *The Calypso,* 230 Fed. 962, is relied on. The case involves an application of section 10, of the act of Congress of May 6, 1882, c. 126 (22 Stat. 61), entitled "An act to execute certain treaty stipulations relating to China" as amended by the act of July 5, 1884, c. 220, 23 Stat. 115 (Comp. St. 1913, § 4297), said section being as follows:

"That every vessel whose master shall knowingly violate any of the provisions of this act shall be deemed forfeited to the United States, and shall be liable to seizure and condemnation in any district of the United States into which such vessel may enter or in which she may be found."

The Calypso was a gasoline launch seized by the Federal authorities and attempted by them to be forfeited. The circuit court of appeals, in an opinion written by Judge Rudkin, clearly states the inquiry as follows:

"In the early part of 1914 Pettenger, accompanied by three companions and a Chinaman named Lee, took the launch on a trip to Mexico, returning to Monterey Bay with a load of contraband Chinese and contraband opium, which were surreptitiously landed on the 16th day of January. The launch was there seized by government officers, and is clearly liable to condemnation so far as the interest of Pettenger is concerned, and also so far as the interest of Sassaman is concerned, *if Pettenger was the master of the launch within the meaning of the law.* The court below decreed a forfeiture as to the interest of Pettenger, but denied a forfeiture as to the interest of Sassaman, and from the latter branch of the decree this appeal is prosecuted."

And then, after discussing the proof in the case, the court finds that Pettenger was not the master of the

launch within the meaning of the law, and affirms the decree of the trial court.

Next is the case of *United States v. Two Gallons of Whisky*, 213 Fed. 986. Section 2140, Rev. St. [U. S. Comp. St. 1916, § 4141], provides that, if any white person or Indian is suspected of *introducing* intoxicating liquor into the Indian country, "the boats, stores, packages, wagons, sleds, and places of deposit of such person" may be searched; "and if any such liquor is found therein, the same, together with the boats, teams, wagons, and sleds used in conveying the same, and also the goods, packages, and peltries of such person" shall be forfeited. In violation of this law, whisky was introduced into the Indian country, and, together with the team, harness and wagon used to transport it, was seized. The whisky belonged to one who employed or induced another to carry it, which other did not own the team, harness or wagon, but had borrowed them for a proper purpose. In the forfeiture proceeding, the owners of the team, harness and wagon intervened, denying the right of forfeiture. The court, construing and applying the law, said:

"Noting that it forfeits the liquor introduced and found, regardless of ownership and introducer, the statute directs search of the *introducer's* conveyances, if he is a white person or Indian, and seizure, libel, and forfeiture of the *introducer's* conveyances and goods. This restrictive language, in view of its absence in the matter of the liquor, and in view of the nature of the statute and in view of the language of analogous statutes, *is significant of congressional intent to limit the forfeiture to the property owned by him who is guilty of the prohibited act.*"

Another case, *United States v. One Automobile*, 237 Fed. 891, is the same kind of a case as the last one referred to, and the opinion was written by the same

judge. None of these cases, however, are in point here, because the statutes involved in them are different from the one involved in this case.

Counsel further calls attention to the following portion of § 41 of the fisheries code:

"The presence in any of the waters of this state of any craft of any nature whatever equipped with any of the appliances required to be licensed by the laws of this state for the taking of fish, or of any fishing appliance for which licenses are required shall be *prima facie* evidence that the owners thereof are engaged in fishing;"

and contends that "*prima facie* evidence" is always rebuttable, and when the legislature provided that the presence of these boats in the waters of the state was *prima facie* evidence that the *owners* thereof were engaged in fishing, which the owners would have the right to rebut, and because of the closing paragraph of § 41, as follows:

"Any person who shall engage in fishing with any appliance whatsoever without having first obtained a license or made lawful application therefor shall be deemed guilty of a misdemeanor and the commissioner is hereby authorized to seize said appliance and the same shall be confiscated to the state," Rem. Code, § 5150-41;

that, therefore, the right of seizure and forfeiture is expressly limited to property *owned* by "any person who shall engage in fishing;" and because in this instance the *owners* were not engaged in fishing, the provision for confiscation has no application to them or their property. Such argument is not convincing. The *owners* who appear in this forfeiture proceeding, and in whose behalf such argument is now made, have not been charged with fishing. We are not now concerned with the crime or proof of fishing, but the forfeiture of property. Again, to say, as is further contended by

counsel in oral argument, that the term *craft* employed in the statute is only to be considered and taken as a token or means of proof of fishing and not included in the term *appliances* used to designate things which may be confiscated, does violence to a settled rule of statutory construction which requires us to also bear in mind the provisions of § 40 of this act, wherein *appliances* is defined as consisting of *boats,* traps, nets, etc.

Our statute takes no inventory of title to the property seized. There is ample authority and reason for the enforcement of such a law. In the case of *United States v. Brig Malek Adhel,* 2 How. (43 U. S.) 209, it was held that, under the act of Congress of March 3, 1819, any piratical aggression subjects the vessel to forfeiture, although the owners are innocent and the vessel was armed for a lawful purpose and sailed on a lawful voyage. Mr. Justice Story, in delivering the opinion of the court, said: .

"The next question is, whether the innocence of the owners can withdraw the ship from the penalty of confiscation under the act of Congress. Here, again, it may be remarked that the act makes no exception whatsoever, whether the aggression be with or without the co-operation of the owners."

To the same effect, see the following cases: *United States v. Schooner Little Charles,* Fed. Cas. No. 15,612; *Smith v. State of Maryland,* 18 How. (59 U. S.) 71; *Fisher v. McGirr,* 1 Gray (Mass.) 1, 61 Am. Dec. 381.

Another case which, on account of the similarity of the statute and the geographic conditions of the waters of the state is almost parallel with the case at bar, is *Boggs v. Commonwealth,* 76 Va. 989. The court in Virginia considered an act of the legislature which is as follows:

"If any person shall take or catch oysters with dredges or instruments other than ordinary oyster tongs within the waters of this state, he shall be deemed guilty of a felony, and upon conviction shall be confined in the penitentiary not less than one nor more than three years, and shall forfeit to the Commonwealth the vessel or boat so employed, which shall be sold at public auction by the sheriff within ten days after said conviction," etc.

Of this statute the court said:

"The theory of the law in all this class of cases is, that the vessel or other property is unlawfully used by the owner himself, or by some other person with whom he has intrusted it; that it is so used in violation of law, and to the detriment of public and private interests, which can only be effectually protected by confiscating the property itself as the offender. And this is more especially true with reference to the fisheries and oyster beds of Virginia, which have been invaded and plundered time and time again by piratical vessels, fitted out in other states and manned by ignorant and irrepressible crews, whose punishment affords but little redress to the state or compensation to the citizens."

It is plain that the case at bar is one in which the trespasser did not get possession of the boats by stealth, force or fraud, but, rather, one in which the owner yielded possession. The statute makes no mention of the title to, or ownership of, the property which, for illegal fishing, may be seized by the commissioner and confiscated to the state. Possession, not ownership, is the guide. The fate of the property is linked to that of him who uses it for the evil purpose. The legislature, in protection of its vast property in the fish of its waters, and not unmindful of the avarice and daring of those, among others, who can look across a boundary line on Puget Sound into the fertile field of a fisherman's dream, has declared a policy, as it

has the right and power to do, with reference to the seizure of property in the possession of one apprehended in the act of illegal fishing, by which, in confiscation proceedings, it will not be annoyed by questions of title, nor, prior to seizure, tempt one to despoil himself of respect for that rule which requires him to exercise watchfulness and vigilance over his own property.

The judgment in this cause is reversed, with directions to the trial court to enter a judgment declaring the property forfeited to the state.

MAIN, C. J., TOLMAN, FULLERTON, and PARKER, JJ., concur.