[No. 30825. Department One. June 16, 1949.]

THE STATE OF WASHINGTON, *Appellant*, v. VIC NELSON *et al.*, *Respondents*.[1]

[1]Reported in 207 P. (2d) 667.

The Attorney General, Rudolph Naccarato, Assistant, D. J. Cunningham, and J. H. Jahnke, for appellant.

Grant Armstrong and Cosgrove, Terhune & Schlosstein, for respondents.

STEINERT, J.—The state of Washington filed in the superior court for Lewis county its petition for forfeiture of a quantity of commercial feeding stuff alleged to have been shipped by one of the defendants and held in possession by the other, in violation of certain provisions of the law relating to the regulation and registration of such commercial substances. The action was tried to the court without a jury. Upon conclusion, and after full consideration, of the evidence, the trial court rendered its memorandum opinion and thereafter entered judgment dismissing the action with prejudice. The state appealed.

Respondent Vic Nelson is engaged in the business of buying, selling, and distributing, at wholesale, certain concentrated commercial feeding stuffs. His headquarters are located in Seattle, Washington. Respondent Ray Pollom, operating under the firm name of Chehalis Grain Co., is engaged in the business of mixing and selling at retail commercial feeding stuffs and other products, in Chehalis, Washington.

On or about October 23, 1947, Pollom ordered from Nelson twenty tons of a concentrated commercial feeding stuff known as "fish mix." Nelson filled the order on November 11th by shipping to Pollom 494 sacks, or bags, of the food concentrate. It is undisputed that, at the time of the ship-

ment, no brand of such concentrated commercial feeding stuff had been registered with the director of agriculture and that the containing sacks had no tags or labels attached thereto specifying the number of net pounds in the respective containers, or identifying the brand or trade-mark under which the article was sold, the name and address of the .vendor or distributor thereof, and a guaranteed analysis of the contents, as required by chapter 211, p. 798, Laws of 1939, as amended by chapter 263, p. 802, Laws of 1943.

On December 17, 1947, an inspector for the state department of agriculture, while making a routine inspection of Pollom's warehouse, discovered the shipment of fish mix, in the condition above described. The department thereupon seized the material and on December 30th notified Nelson that it was being held for violation of the statute in the respects above noted, at the same time advising him that he would be given until January 8, 1948, to present his views respecting the alleged violations, before the matter was referred to the prosecuting attorney for prosecution.

On January 20, 1948, a complaint was filed in justice court in King county, charging Nelson with the crime of unlawful sale of concentrated commercial feeding stuff without a registered brand. The charge was based specifically upon the alleged sale and delivery of the 494 sacks of feeding stuff to Pollom. To this charge Nelson pleaded not guilty. A hearing was had February 6, 1948, at which proceeding Nelson was found guilty as charged and fined fifty dollars, including costs.

Thereafter, on March 3, 1948, the state commenced the present proceeding against both of the respondents herein, alleging in its petition that the 494 sacks of commercial feeding stuff above described had not been registered as required by law; that any sale by the consignor or consignee thereof was prohibited; that the shipment had been seized by the department; and that the state was entitled, under the law, to make sale or other disposition of the seized property. The prayer of the petition was that the court issue an order directing these respondents to show cause, on a date named, why the director of the department

should not be authorized and directed to make sale of the material in question, in the manner provided by law. An order to show cause was issued as requested, and in return thereto respondents filed a demurrer to the petition and also an answer containing a general denial and an affirmative defense alleging that the judgment in the criminal proceeding referred to above was *res judicata* of the issues in the present action.

A hearing was had on May 20th, at which time considerable evidence, both oral and documentary, was introduced. The state submitted the record of conviction in justice court, contending that it furnished indisputable ground for granting judgment of forfeiture. In addition to that evidence, however, the respective parties offered other evidence, intended by them to present the full and complete facts and circumstances surrounding the violation of the statute, as variously viewed by the opposing parties. Inasmuch as this latter evidence, considered as a whole, has a definite bearing upon the view taken by the trial court in its determination of the case, we shall as briefly as possible make reference to such additional evidence as it was brought out by the testimony.

The concentrated commercial feeding stuff here in question was not manufactured directly by Nelson, but was manufactured for him by a concern located in Tacoma. Nelson had originally sold this particular lot of concentrated feeding stuff to a dealer in Oregon and was intending to ship the goods into that state, where it was to be analyzed, registered, and tagged. This original intention to ship in interstate commerce was partially responsible for Nelson's failure to comply with the law with reference to registering the brand and tagging the shipment. Owing to the fact, however, that the plant of the Oregon purchaser had in the meantime burned down, that sale was not consummated, and, as a result of subsequent negotiations with Pollom, the shipment was sent to him instead, upon his order stated above. In those negotiations, Pollom was fully advised as to the circumstances affecting the transaction, the ingredients of the feeding substance, and

the irregularity of the container sacks, and was also told that the ultimate price to be paid by him for the lot would depend upon an analysis determining the amount of protein in the product.

After seizure of the goods by the state inspector on December 17, 1947, Nelson had one or more conferences with that officer respecting the matter. From those conferences and the conversations that took place therein, Nelson understood that if an analysis of the seized product were made and the analysis proved that the feeding stuff contained no ingredients which were deleterious, detrimental, or injurious, and that the constituent percentages were within the permissible limits of the applicable statute, the entire matter of the disposition of the feed mix would be settled by having the goods registered and tagged as required by law, with permission thereafter to sell and distribute the merchandise in regular business course.

Upon that understanding, Nelson on December 31, 1947, had samples of the shipment analyzed by an accredited firm of chemists in Seattle. Later, the state also had an analysis made by a state chemist. The two analyses were in accordance with each other, establishing the fact that the material in question contained no ingredients which are deleterious, detrimental, or injurious. Upon the trial of the instant case, it was stipulated that the feeding mix here involved was in fact pure and wholesome and was in no respect deleterious or injurious.

In further pursuance of his understanding above stated, Nelson in March, 1948, applied to the department of agriculture, in Olympia, for a certificate of registration of the brand adopted by him for the product here in question. Upon the showing then and there made by Nelson, he was issued a certificate by the department, stating that he had complied with the statute relating to the registration of concentrated commercial feeding stuff, and that the brand or trade name furnished by him was duly registered. The certificate, appearing to be fair upon its face, was admitted in evidence, over the state's objection that it had been improperly obtained. At the time of the trial herein, Nelson

had also tagged the sacks which were still in Pollom's warehouse.

Nelson frankly admitted upon the trial of the present action that, at the time of shipment of the goods in question to the Chehalis Grain Co., he had not complied with the law in the several respects above noted, and that he was at fault. In mitigation of the possible consequences of his violation of the law, however, he offered as extenuating circumstances the facts that for a period of nearly two years last past he had not been able to attend to his business regularly, owing to a serious heart condition; that although he had several employees in his office, they were all inexperienced veteran soldiers whom he was endeavoring to train; and that his own son, a child, had recently been critically ill, demanding a great part of his time and attention. His testimony was to the effect that his act in making the shipment to Pollom was wholly in good faith, and with no intent to deceive or defraud either the state department or any prospective purchaser. It was shown that the value of the material seized by the state was approximately $2,300. Pollom has not paid Nelson for the goods, and it is undisputed that he is but a nominal party to this action, with no interest in the outcome thereof.

Upon the evidence thus submitted, the trial court refused to direct that the material in question be forfeited and instead dismissed the state's petition.

The law upon which the present action by the state is predicated is found in chapter 211, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 7016-1 [P.P.C. § 250-1] *et seq.*), as amended by chapter 263, Laws of 1943 (Rem. Supp. 1943, § 7016-23). It is known and referred to as the Washington feed, fertilizer, and livestock remedy act.

Section 11 of the act (Rem. Rev. Stat. (Sup.), § 7016-11) makes it unlawful for any purpose to distribute, sell, display, or offer for sale any concentrated commercial feeding stuff, fertilizer, or livestock remedy ". . . which is in itself, or which contains, any ingredients which are deleterious, detrimental, or injurious, or which are deleterious,

detrimental, or injurious when used, fed, or applied as directed."

Section 23 of the act as amended (Rem. Supp. 1943, § 7016-23) makes it unlawful for any person, whether at wholesale or retail, to sell, offer to sell, or distribute any brand of concentrated commercial feeding stuff, fertilizer, or livestock remedy in the state of Washington, unless each such brand shall have been registered with the director of agriculture, on a form prescribed and provided by that officer, showing all the ingredients and the guaranteed analysis thereof.

Section 35 of the act (Rem. Rev. Stat. (Sup.), § 7016-35) makes it unlawful to distribute, sell, offer for sale, or advertise for sale concentrated feeding stuffs in sacks containing more than fifty pounds, except the standard one-hundred pound sack, unless each sack is labeled in a conspicuous manner on the face thereof with the true net weight of the contents thereof in plain English words and figures at least two inches in height.

Section 36 of the act (Rem. Rev. Stat. (Sup.), § 7016-36) provides that any person who shall sell, offer, or expose for sale in this state any concentrated commercial feeding stuff, shall affix or cause to be affixed to each package thereof a tag or label having printed thereon the number of net pounds of such stuff in the sack, the name, brand, or trademark under which the article is sold, the name and address of the manufacturer, distributor, or vendor, and the guaranteed analysis of the product, as required by the act.

Section 22 of the act (Rem. Rev. Stat. (Sup.), § 7016-22), with which we are here particularly concerned, reads:

"Possession by any person of any brand of concentrated commercial feeding stuff, fertilizer, or livestock remedy which has not been registered with the director, or the sale of which is for any reason prohibited by this act, or being the consignee thereof, shall be prima facie evidence that the same is kept or shipped to the said person in violation of the provisions of this act, and the director is hereby authorized to seize upon and take into his possession such articles of concentrated commercial feeding stuff, fertilizer, and livestock remedy and thereupon apply to the superior

court of the county in which the seizure is made for an order directing him to dispose of or sell the same and apply the proceeds of the same to the general fund: *Provided, however,* That the director shall first give notice to the person in whose possession such goods are found, or if in the possession of a common carrier, then the consignee of such goods, notifying such person that he has seized such goods, and the reasons therefor, and that he has made an application to the superior court for an order to sell or dispose of the same, and that he will call up said application for hearing on a day certain, which shall not be less than ten (10) days from the service of such notice, and that at the hearing of said application the said person shall show cause, if any he has, why the prayer of the petition should not be granted. Upon the hearing of said petition, affidavits or oral testimony may be introduced to establish the contention of the respective parties. Hearing, however, may be had at an earlier date by mutual consent of the parties to said application."

Section 56 of the act (Rem. Rev. Stat. (Sup.), § 7016-56) provides that any person who violates any of the provisions thereof shall be guilty of a misdemeanor and, upon conviction, shall, for the first offense, be fined not more than one hundred dollars, and for the second and each subsequent offense not more than five hundred dollars.

It is the contention of the state that the judgment of conviction rendered against Nelson in the justice court mentioned above is conclusive upon him, in this action, both as to his criminal liability for violation of the statute in question and also as to the contraband status of the goods here involved; that such judgment constituted a bar to further inquiry upon either of those issues; and that therefore it became mandatory upon the trial court to render a judgment of forfeiture of the goods as contraband. On the other hand, it is one of the contentions of respondents that the judgment of conviction of Nelson in the justice court is *res judicata* of all issues and matters in this action and, as such, constitutes a bar to the maintenance of the present action. The trial court did not agree with either of these contentions, nor do we.

█ The judgment of conviction is undoubtedly conclusive of the fact that Nelson violated certain provisions of the statute referred to above, particularly in the respects charged in the criminal complaint. But, under our interpretation of § 22 of the Washington feed, fertilizer, and livestock remedy act, which section we have hereinabove quoted in full and upon which the present action for forfeiture of the goods is based, the judgment in the criminal action was not conclusive of the right of the trial court, in this action, to inquire fully into the facts and circumstances surrounding and connected with such prior violation, nor was it mandatory upon the trial court herein, without such further inquiry, to render a judgment of forfeiture as for contraband goods.

Section 22 by its terms makes possession of any unregistered brand of concentrated commercial feeding stuff *prima facie* evidence that the stuff is kept by or shipped to the possessor in violation of the provisions of the act, and authorizes the director of agriculture to seize and take into possession such articles and thereafter apply to the proper superior court for authority to dispose of or sell them, appropriating the proceeds thereof to the general fund. However, the same section provides that the director shall give to the person in whose possession the goods are found notice of such seizure and the reasons therefor and of the fact that the director has made application to the superior court for an order to sell or dispose of the property; that, at the hearing of such application, the party in whose possession the goods were found may show cause, if any he has, why the prayer of the director's petition should not be granted; and that, at such hearing, evidence may be introduced to establish the contentions of the respective parties.

█ It will be observed that the statute does not make forfeiture or confiscation of the goods a part of the *penalty* for violation of its provisions, nor does it provide that, upon discovery of such goods in the possession of a person, the director shall summarily seize, sell, or otherwise dispose

of them. On the contrary, the director, upon such *prima facie* evidence, is merely *authorized,* not commanded, to seize the property; and, in any event, he is required to apply to the court for authority to take further action in the premises, such action being dependent upon the outcome of a hearing by the court, at which the person affected shall have an opportunity to establish his contention and thereby show cause why the articles should not be forfeited or confiscated. Had the legislature intended that, upon seizure of such goods, confiscation thereof should follow as a matter of course, and that it should be mandatory upon the court to so adjudge without further consideration of any exculpatory facts or extenuating circumstances, it would have been an easy matter for the legislative body so to provide, and it undoubtedly would have done so, as it has in other legislation of a similar nature.

In support of its contention to the contrary, appellant cites and relies upon a number of Federal decisions and also upon certain cases from this court. These we shall now consider.

The case of *Origet v. United States,* 125 U. S. 240, 31 L. Ed. 743, 8 S. Ct. 846, was a suit *in rem* originally brought by the United States against four cases of merchandise, seized for violations of the customs revenue law. The statute under which the proceeding was instituted provided that any person found guilty of making or attempting to make entry of imported merchandise through certain fraudulent means,

" . . . shall, for each offense, be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both; and, in addition to such fine, *such merchandise shall be forfeited.*" (Italics ours.)

One of the contentions made by Origet, the owner of the imported merchandise, was that the merchandise could not be forfeited independently of the imposition of the fine. Rejecting that contention, the supreme court of the United States said:

"But we are of opinion that this is not the proper construction of the section. The fine, or the imprisonment, or both, are to follow conviction on a criminal prosecution of the owner, importer, consignee, agent, or other person who does the act forbidden by the section, with the intent therein mentioned. The section then goes on to say that, 'in addition to such fine, such merchandise shall be forfeited.' The sole meaning of this is, that the person owning the merchandise *shall lose it by forfeiture,* in addition to such possible loss as may come to him by the imposition, if he is the offender, of the pecuniary fine, on the criminal prosecution against him. *But the merchandise is to be forfeited irrespective of any criminal prosecution.* The forfeiture accrues to the United States on the commission or omission of the acts specified. No condition is attached to the imposition of the forfeiture. The section does not say that the merchandise shall be forfeited only on the conviction of some offender, whether the owner of the merchandise or one of the other persons named in the section. The person punished for the offence may be an entirely different person from the owner of the merchandise, or any person interested in it. The forfeiture of the goods of the principal can form no part of the personal punishment of his agent." (Italics ours.)

It needs no further comment to establish that, by reason of the wording of the statute in the cited case, forfeiture of the mechandise became mandatory upon conviction of the party concerned therein. As shown above, our statute contains no such requirement.

In the case of *Coffey v. United States,* 116 U. S. 436, 29 L. Ed. 684, 6 S. Ct. 437, proceedings were upon an information filed by the government against ten barrels of apple brandy, one apple mill, thirty-seven tubs, and two copper stills alleged to be the property of one A. G. Coffey, and under seizure, on land, by a deputy collector of internal revenue, as being forfeited to the United States. The statute under which that proceeding was brought, § 3257 of the Revised Statutes, provided:

"Whenever any person engaged in carrying on the business of a distiller defrauds, or attempts to defraud, the United States of the tax on the spirits distilled by him, or of any part thereof, he *shall forfeit the distillery and dis-*

*tilling apparatus used by him,* and all distilled spirits . . . found in the distillery and on the distillery premises, and shall be fined not less than five hundred dollars nor more than five thousand dollars, and be imprisoned not less than six months nor more than three years." (Italics ours.)

The defendant pleaded a judgment of acquittal in a former criminal action involving the same property. Holding that such defense was good, the supreme court of the United States said:

"It is true that § 3257, after denouncing the single act of a distiller defrauding or attempting to defraud the United States of the tax on the spirits distilled by him, declares the consequences of the commission of the act to be (1) that certain specific property *shall be forfeited*: and (2) that the offender *shall be fined and imprisoned*. [Preceding italics ours.] It is also true that the proceeding to enforce the forfeiture against the *res* named must be a proceeding *in rem* and a civil action, while that to enforce the fine and imprisonment must be a criminal proceeding, as was held by this court in *The Palmyra,* 12 Wheat., 1, 14 [25 U. S. bk 6, L. Ed. 531, 535]. Yet, where an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding, instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person, on the subsequent trial of a suit *in rem* by the United States, where, as against him, the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in such suit *in rem.*"

Continuing further, the court said:

"Whether a conviction on an indictment under § 3257 could be availed of as conclusive evidence, in law, for a condemnation, in a subsequent suit *in rem* under that section, and whether a judgment of forfeiture in a suit *in rem* under it would be conclusive evidence, in law, for a conviction on a subsequent indictment under it, are questions not now presented."

Thus, it will be seen that the point which the appellant now urges in this court was not decided in the *Coffey* case, but was expressly reserved. Furthermore, that case is not applicable here, for the reason that the statute there in-

volved specifically declared that one of the consequences of a violation of the statute was that the "specific property shall be forfeited." No such provision is contained in the statute under consideration here.

In the case of *In re Food Conservation Act* (D. C. N. Y. 1918), 254 Fed. 893, the question for decision was, in the words of the court,

". . . whether or not, after the conviction of a defendant of the offense of importing distilled spirits into the United States contrary to law (and importation is absolutely prohibited under the act of August 10, 1917 [40 Stat. 282 (Comp. St. 1918, § 3115 1/81)]), and a fine, or imprisonment, or both, has been imposed as prescribed by that act, proceedings in rem for the forfeiture of both such distilled spirits so imported and the instrumentalities used in so unlawfully bringing in or importing the distilled spirits, or either, can be maintained against the party guilty of the unlawful act, and who has been convicted and fined or imprisoned, or against the property itself so used and belonging to him. In other words, after criminal prosecution and punishment for the offense by fine or imprisonment, is the prosecution of proceedings to condemn and forfeit an effort to secure and enforce an added or double punishment, and, if successful, would such condemnation operate as an added or double punishment for the same offense?"

After an analysis of the various cases touching the subject of the question as propounded, the court concluded:

"I am of the opinion, while the authorities are conflicting, that when a defendant has been indicted, convicted, and punished by a court of competent jurisdiction, pursuant to the provisions of section 15, c. 53, Act Aug. 10, 1917 (see, also, section 301, c. 63, Act Oct. 3, 1917, title 3, 40 Stat. 308 [Comp. St. 1918, § 8739b] War Tax on Beverages), for bringing distilled spirits into the United States, he cannot be proceeded against by proceedings in rem for the forfeiture of his vehicles used in bringing in such spirits, inasmuch as the statute is new, denounces the penalty and punishment for the offense to be imposed, and makes no reference to any forfeiture of such property, or to any other or prior statute.

"As to the distilled spirits brought in contrary to law, I am of the opinion they are unlawfully in the United States, and may be seized and disposed of by forfeiture or other-

wise, and that such seizure and forfeiture is not the imposition of a double or added punishment."

The opinion in that case did not have occasion to consider, nor did it consider, the question whether, under the statutes there involved, a conviction for violation of a law prohibiting the importation of certain merchandise made it mandatory that such merchandise be forfeited or confiscated. That case therefore has no bearing upon the question with which we are here concerned.

Appellant also cites and relies upon the following cases from this jurisdiction: *State v. Umaki,* 103 Wash. 232, 174 Pac. 447; *Fisher Flouring Mills Co. v. Brown,* 109 Wash. 680, 187 Pac. 399; *State v. Mavrikas,* 148 Wash. 651, 269 Pac. 805.

In the *Umaki* case, *supra,* proceedings were instituted by the state to forfeit certain boats and other property used in unlawful fishing. The fisheries code, upon which the proceedings were brought, declared, in one of its sections, that any fishing appliance placed in the waters of this state for the purpose of illegal fishing was a public nuisance, subject to abatement as such, and made it the duty of the state fish commissioner to enforce the provisions of that section of the code; another section directed that any fishing appliance used by a person engaged in fishing without a license "shall be confiscated to the state." Reversing the judgment of the superior court in that action, this court held that, under the terms of the statute, the fate of the property is linked to that of him who uses it for the evil purpose, and that the legislature had declared a policy, by its enactment of the statute, which required that the property, even though owned by persons other than those who had used it for the unlawful purpose, shall be forfeited to the state. That case differs radically from this one, in that, under the statute there involved, confiscation of the property was made mandatory. Here, it is not.

The *Fisher Flouring Mills* case, *supra,* although it involved an earlier concentrated feeding stuffs act, similar to the one presented in the instant case, was not an action to forfeit property covered by the act. It was simply a pro-

ceeding to enjoin the prosecuting attorney from enforcing certain provisions of the statute then existing. That case has no bearing upon the question with which we are here concerned.

In the *Mavrikas* case, *supra,* action was brought by the state to confiscate a motor boat and appliances used for illegal fishing in the waters of Puget Sound. The action was based upon the same sections of the fisheries code as were involved in the *Umaki* case, *supra,* and the same result was reached. In its opinion in the *Mavrikas* case, this court stressed the language of the statute which made confiscation mandatory upon conviction for violation of the law. For reasons heretofore given, the decision in that case has no controlling effect upon the situation here.

We conclude our examination of the cases cited by appellant by saying that none of them is out of harmony with our former pronouncement herein that the judgment in the criminal action was not conclusive of the right of the trial court to inquire into the circumstances of Nelson's infraction of the law, and that it was not mandatory upon the court to render a judgment of forfeiture.

 This leaves for decision the remaining question whether the trial court abused its discretion, under the circumstances, in refusing to forfeit the goods in question, as prayed for by the appellant. On that question we entertain no doubt.

The court took into consideration, as it had the right to do, not only the fact that Nelson had been convicted and fined for the misdemeanor charged against him in the justice court, but also the additional facts brought out in the evidence submitted in the *in rem* proceeding, namely, that the feed mix shipped by Nelson contained no ingredient that was deleterious, detrimental, or injurious, but in fact was pure and wholesome; that, although Nelson had violated the law, his acts had been in good faith, with no intent to deceive or defraud the department or any prospective purchaser; that Pollom, the purchaser, had in no sense been deceived nor had he sustained any loss in the transaction; that there were at least some exculpatory circum-

stances connected with Nelson's infraction of the law, as pointed out above; that steps had since been taken to comply with the full requirement of the law with reference to the particular shipment, to which the state department had seemingly given its assent; and the fact that the forfeiture of the entire shipment, valued at $2,300, might seem unconscionable under the circumstances.

Upon careful consideration of all the facts and circumstances as shown by the evidence submitted upon the trial, we cannot say that the trial court abused its discretion in making the decision that it did.

For these reasons, the judgment of that court is affirmed.

JEFFERS, C. J., BEALS, MALLERY, and HILL, JJ., concur.